FILED

10 AUG -9 PM 4: 17

CLERK. U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

FAXED

1  MATTHEW M. WALSH (SBN 175004)
   e-mail: mwalsh@dl.com
2  DEWEY & LeBOEUF LLP
   333 South Grand Avenue, Suite 2600
3  Los Angeles, CA 90071-1530
   Telephone:    (213) 621-6000
4  Facsimile:    (213) 621-6100

5  JEFFREY L. KESSLER (*pro hac vice* to be filed)
   e-mail: jkessler@dl.com
6  ADAM J. KAISER (*pro hac vice* to be filed)
   e-mail: akaiser@dl.com
7  DEWEY & LeBOEUF LLP
   1301 Avenue of the Americas
8  New York, NY 10019-6092
   Telephone:    (212) 259-8000
9  Facsimile:    (212) 259-6333

10 Attorneys for Plaintiffs/Petitioners
   National Football League Players Association,
11 on its own behalf and on behalf of
   Bruce Matthews

12

13

14              **UNITED STATES DISTRICT COURT**

15             **SOUTHERN DISTRICT OF CALIFORNIA**

16                                      '10 CV 1671      JLS WMc

17 NATIONAL FOOTBALL LEAGUE PLAYERS   )  Case No.
   ASSOCIATION, on its own behalf and on behalf of )
18 BRUCE MATTHEWS,                     )
                                       )
19            Plaintiffs/Petitioners,  )
                                       )  **COMPLAINT AND PETITION TO**
20            v.                       )  **VACATE ARBITRATION AWARD**
                                       )
21 NATIONAL FOOTBALL LEAGUE           )
   MANAGEMENT COUNCIL and             )
22 TENNESSEE TITANS,                  )
                                       )
23            Defendants/Respondents.  )
                                       )
24                                     )
                                       )
25                                     )
                                       )
26 _____)

27

28

---

COMPLAINT AND PETITION TO VACATE ARBITRATION AWARD

Dewey & LeBoeuf LLP
333 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-1530,

Dewey & LeBoeuf LLP
333 South Grand Avenue; Suite 2600
Los Angeles, CA, 90071-1530,

1       Plaintiffs/Petitioners National Football League Players Association ("NFLPA"), on

2   its own behalf and on behalf of Bruce Matthews (collectively "Plaintiffs/Petitioners"), for their

3   Complaint and Petition to vacate an arbitration award against Defendants/Respondents the

4   National Football League Management Council ("NFLMC") and Tennessee Titans ("Titans")

5   (collectively "Defendants/Respondents"), allege as follows:

6                                  **NATURE OF THE PROCEEDING**

7       1.      This is an action pursuant to Section 301 of the Labor Management

8   Relations Act ("LMRA"), 29 U.S.C. § 185, to vacate the Arbitration Award (the "Award") issued

9   by National Football League ("NFL") System Arbitrator Calvin William Sharpe ("Arbitrator

10  Sharpe") on August 5, 2010, in the arbitration captioned *In the Matter of the Arbitration between*

11  *National Football League Management Council/Tennessee Titans and National Football League*

12  *Players Association/Bruce Matthews.*  A true and correct copy of the Award is attached hereto as

13  Ex. A.

14      2.      The Award holds that Matthews, a former NFL player, waived the right to

15  obtain workers' compensation benefits under California's workers' compensation statute by

16  agreeing to have Tennessee law applied to any workers' compensation claim he filed.  The Award

17  requires Matthews to cease and desist from arguing, in California's workers' compensation courts,

18  that he is entitled to benefits under California law pursuant to California's workers' compensation

19  statutes.  Under the Award, if the California courts nonetheless apply California law, Matthews

20  must dismiss his claim in California.

21      3.      For three independent reasons, the Award must be vacated.  *See Sprewell v.*

22  *Golden State Warriors*, 266 F.3d 979, 986 (9th Cir. 2001); *Int'l Union, United Mine Workers of*

23  *Am. v. Marrowbone Dev. Co.*, 232 F.3d 383, 388-89 (4th Cir. 2000).

24      4.      *First*, the Award violates basic principles of federal labor law. The Supreme

25  Court has ruled that, as a matter of federal labor law, a union and an employer may not waive state

26  laws that protect the health, safety and welfare of workers, including workers' compensation laws.

27  While under federal labor law unions and management may contract to afford workers *greater*

28

benefits than those available under state laws, they may *not* contract to take such state benefits away.  The Arbitrator ignored this settled federal labor law and effectively ruled that the NFLPA and NFL waived the rights of players for the Titans, such as Matthews, to seek workers' compensation benefits under California statutory law.

5.        The Award, if not vacated, would mean that every NFL Player who agreed to a non-California choice of law provision in their NFL Player Contract waived the statutorily non-waivable rights, protections and privileges of California's workers' compensation statute, a result that is clearly contrary to Supreme Court precedent and basic principles of federal labor law.

6.        *Second*, the Award offends California public policy.  Virtually every state workers' compensation statute, including California's, makes clear that contracts waiving workers' compensation benefits are illegal and contrary to public policy.  Yet, the Award holds that those Titans players such as Matthews who may seek workers' compensation benefits under California law have, through the National Football League Collective Bargaining Agreement ("CBA"), waived their right to seek such benefits under California law.  The Award thus forces an illegal result and is contrary to public policy.

7.        *Third*, the Award is inconsistent with the Full Faith and Credit Clause of the U.S. Constitution, which allows California to apply its workers' compensation laws to the exclusion of other state's laws, even if, as here, the employee and employer agreed to waive protections afforded by California's statutory law.  The Award effectively precludes California from applying its own law to a claim brought properly within its jurisdiction.   The Arbitrator lacked the constitutional authority to preclude the application of California law to this case in violation of the Full Faith and Credit Clause and thus exceeded the scope of his authority.

/ / /

/ / /

/ / /

/ / /

/ / /

Dewey & LeBoeuf LLP
333 South Grand Avenue; Suite 2600
Los Angeles, CA, 90071-1530,

2

**JURISDICTION AND VENUE**

8.     This action arises under Section 301 of the LMRA, as the award was made pursuant to a collective bargaining agreement.[1]

9.     This Court has subject matter jurisdiction in this action pursuant to 28 U.S.C. § 1331, in that it arises under Section 301 of the Labor Management Relations Act, ("LMRA"), 29 U.S.C. § 185.

10.     Venue is proper in this court under 28 U.S.C. § 1391 and 29 U.S.C. § 185.

**PARTIES**

11.     The NFLPA is a labor organization certified by the National Labor Relations Board as the exclusive bargaining representative of all NFL Players.  The NFLPA regularly represents players in this district for the purposes of collective bargaining, including former Tennessee Titans player Bruce Matthews.

12.     Bruce Matthews was a professional football player and member of the NFLPA.  Matthews played for the Titans and its predecessors, the Tennessee Oilers and the Houston Oilers from 1983-2002 before retiring.

13.     The NFLMC is the exclusive bargaining representative of present future and employer member clubs of the NFL, including the Titans.

14.     Matthews filed his workers' compensation claim before the Workers' Compensation Appeals Board in the State of California.

15.     One of the 32 franchises in the NFL, the San Diego Chargers, is headquartered in San Diego, California.  Another two of the NFL's franchises, the San Francisco 49ers and the Oakland Raiders, are also headquartered in California.  The NFL derives revenue

---

[1]   Section 301 of the LMRA, rather than the Federal Arbitration Act (FAA), provides federal courts with jurisdiction over labor arbitration awards. *See Sprewell*, 266 F.3d at 986 ("Section 301 empowers this court to review an arbitration conducted under the terms of a collective bargaining agreement."); *San Diego County Dist. Council of Carpenters of United Bhd. of Carpenter & Joiners of Am. v. Cory*, 685 F.2d 1137, 1141 (9th Cir. 1982) (noting that Congress did not intend for the FAA to be used to review arbitration awards involving collective bargaining agreements). However, the law relative to the FAA governs cases brought under Section 301 with respect to arbitral awards. *Granite Rock v. Int'l Bhd. of Teamsters*, 130 S.Ct. 2847, 2857, n.6 (2010).

Dewey & LeBoeuf LLP
333 South Grand Avenue; Suite 2600
Los Angeles, CA, 90071-1530,

COMPLAINT AND PETITION TO VACATE ARBITRATION AWARD

from throughout the State of California through advertising, ticket sales, merchandising and broadcasting revenue.

16.     Upon information and belief, the Tennessee Titans is incorporated in Delaware and is a member franchise of the NFL.

17.     The Titans regularly conduct business in California and actively scouts and recruits players in California.  Of the 16 games in the Titan's 2009 season schedule, 2 were played against California teams.   The Titans derives revenue from the State of California through advertising, ticket sales, merchandising and broadcasting revenue.

## FACTUAL BACKGROUND

### Agreements Governing NFL Players And NFL Teams

18.     The parties are bound by a Collective. Bargaining Agreement ("CBA") negotiated between the NFLMC, on behalf of the NFL teams, and the NFLPA, on behalf of all NFL players.  Article IX of the CBA contains an arbitration provision, which mandates that all disputes between the parties involving the enforcement or interpretation of the CBA be submitted to final and binding arbitration before a mutually selected arbitrator.  Pursuant to the arbitration provision, a "non-injury grievance" may be initiated by a player, a member team, the NFLMC or the NFLPA by filing a written notice to the opposing parties.

19.     All NFL teams and players are bound by the standard player contract, the NFL Player Contract, negotiated between the NFLPA on behalf of players and the NFLMC on behalf of teams ("NFL Player Contract").  The Player Contract is contained within and part of the CBA, although NFL Clubs and NFL Players may add to the NFL Player Contract.  Paragraphs 22 and 26D of Matthews's NFL Player Contract constitute the purported choice of law provisions that Defendants/Respondents and the Arbitrator interpret as requiring the application of Tennessee law to any workers' compensation claims that arise.

20.     NFL players who are injured and unable to play professional football may be entitled to a number of benefits under the CBA, the Player Contract and state law.  Among these benefits are state workers' compensation benefits.

Dewey & LeBoeuf LLP
333 South Grand Avenue; Suite 2600
Los Angeles, CA, 90071-1530,

4

*Dewey & LeBoeuf LLP*
*333 South Grand Avenue; Suite 2600*
*Los Angeles, CA, 90071-1530,*

*Petitioner's WCAB Case and Respondents' Arbitration*

21.   On April 8, 2008, Matthews filed an application for workers' compensation benefits before the Workers' Compensation Appeals Board (WCAB) in the state of California.

22.   On September 12, 2008, the Titans and the NFLMC filed a grievance ("Grievance") with Arbitrator Sharpe, pursuant to Article IX of the NFL CBA. The Grievance claimed that Matthews's application for workers' compensation benefits in California violated a purported forum selection clause in the Player Contract.

23.   In February 2009, the Titans petitioned the WCAB to dismiss Matthews' claim or to defer to arbitration.

24.   On March 23, 2009, Matthews opposed the Titans' petition to WCAB.

25.   The arbitration proceeded while the WCAB case remained pending. The WCAB case is still pending.

***The Award***

26.   Arbitrator Sharpe issued an award on August 5, 2010, sustaining the Grievance in part and denying it in part. He held:

> [Matthews] is not precluded under Paragraph 26D from filing his workers compensation claim in California. However, [Matthews] is required to proceed under Tennessee law, and accordingly shall cease and desist from attempting to persuade the California tribunals to apply California law in violation of Paragraph 26D of the Player's Contract. Further, under this order [Matthews] is required to withdraw from the California proceeding, should the California tribunals ultimately deny the application of Tennessee law.

*See* Ex. A at 18.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

5

Dewey & LeBoeuf LLP
333 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-1530,

## THE AWARD MUST BE VACATED

## AS CONTRARY TO FEDERAL LABOR LAW

27.   The Award requires a result that is contrary to federal labor law and must be vacated.

28.   Under California Labor Code § 3600, injured workers who are subject to the statute have the right to file, in a California court, state law claims for California workers' compensation benefits.  These rights cannot be waived.  California Labor Code § 5000 provides: "No contract, rule, or regulation shall exempt the employer from liability for the compensation fixed by this division . . . ."

29.   The Award purports to negate unwaivable state law rights, on the basis of a collective bargaining agreement, but that is a clear perversion of settled federal labor law.  *See Livadas v. Bradshaw*, 512 U.S. 107, 123, 114 S. Ct. 2068 (1994) (a collective bargaining agreement could not supplant state employee benefits law because principles of federal pre-emption "cannot be read broadly to preempt nonnegotiable rights conferred on individual employees as a matter of state law").

30.   Under federal labor law preemption, collective bargaining agreements that provide *greater* benefits to employees preempt inconsistent state laws.  *See Lodge 76, Int'l Ass'n of Machinists & Aerospace Workers v. Wis. Employment Relations Comm'n*, 427 U.S. 132, 138, 96 S. Ct. 2548 (1976).[2]  Unions thus can, and often do, bargain for benefits in excess of those minimum benefits (such as minimum wages, termination benefits, injury benefits, and the like) required by state law.

---

[2]  *See also Nelson v. Victory Elec. Works, Inc.*, 338 F.2d 994 (4th Cir. 1964), *aff'g* 227 F. Supp. 404, 406 (D. Md. 1964) (collective bargaining agreement provision whereby the employer agreed to provide workers' compensation benefits equivalent to those provided in the District of Columbia even when the employees were injured while working outside of the District held to govern injury suffered in Maryland despite inconsistent Maryland workers' compensation laws, which provided that "[n]o employer or employee ... shall exempt himself from the burden or waive the benefit of this article by any contract ..."). As explained by the district court in *Nelson*: "it is entirely competent for an employer and an employee by express contract to supplement benefits under the Act or to relax its restrictions or requirements in favor of the employee." *Nelson*, 227 F. Supp. at 407, *aff'd* 338 F.2d 994 (4th Cir. 1964) (citation omitted).

COMPLAINT AND PETITION TO VACATE ARBITRATION AWARD

Dewey & LeBoeuf LLP
333 South Grand Avenue; Suite 2600
Los Angeles, CA, 90071-1530,

31.   However, it is axiomatic that a union and employer may *not* contract to take away from employees state law benefits that improve employees' health, safety or welfare.  The "floors" for such employee benefits, which are not waivable under state law, may not be waived by a union and the employer, just as they cannot be waived by an individual employee and his or her employer.  As stated by the Supreme Court:

> Minimum state labor standards affect union and nonunion employees equally, and neither encourage nor discourage the collective-bargaining processes that are the subject of the NLRA. . . . [M]andated-benefit laws are not laws designed to encourage or discourage employees in the promotion of their interests collectively; rather, they are in part "designed to give specific minimum protections to individual workers and to ensure that each employee covered by the Act would receive" the mandated health insurance coverage.

> *It would further few of the purposes of the Act to allow unions and employers to bargain for terms of employment that state law forbids employers to establish unilaterally.*  "Such a rule of law would delegate to unions and unionized employers the power to exempt themselves from whatever state labor standards they disfavored."  It would turn the policy that animated the Wagner Act on its head to understand it to have penalized workers who have chosen to join a union by preventing them from benefiting from state labor regulations imposing minimal standards on nonunion employers.

See *Met. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 755-56, 105 S. Ct. 2380 (1985) (citations omitted; emphasis added).

32.   A collective bargaining agreement cannot supplant unwaivable state laws protecting the health, safety and welfare of workers, because principles of federal preemption "cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law."  *Livadas*, 512 U.S. at 123.

33.   This doctrine has been applied specifically to California's workers' compensation statute by the Supreme Court and other federal courts. In *Alaska Packers Ass'n v. Indus. Accident Comm'n of Cal.*, 294 U.S. 532, 55 S.Ct. 518 (1935), the Supreme Court held that California had a legitimate public interest in controlling the employer-employee relationship and that it did not exceed its constitutional power by prohibiting a waiver of workers' compensation

COMPLAINT AND PETITION TO VACATE ARBITRATION AWARD

rights designed to promote the health and safety of employees.  In *Alaska Packers*, an employer and employee agreed in writing that all workers' compensation disputes would be resolved under Alaskan law.   However, California Labor Code § 5000 (known at the time as Section 27(a)) provided then (as it does today) that California's workers' compensation statute was not waivable. *Id.* at 539.   The Supreme Court held that Section 5000 was valid and enforceable, and that employees covered by the California workers compensation statute could not waive their statutory rights. *Id.* at 543. *Alaska Packers* establishes beyond doubt that the California statute is valid and enforceable and that an employment agreement purporting to waive the employee's rights under California's workers' compensation statute is void as a matter of law.

34.     In *Contract Servs. Network v. Aubry*, 62 F.3d 294, 298-99 (9th Cir. 1995), the court held that a collective bargaining agreement which provided workers' compensation benefits from an ERISA fund could not pre-empt California's workers compensation statute:

> [T]he California law involved here applies to all private employers without regard to any collective bargaining agreement that may govern other employment matters.  The law cannot be undercut by collective bargaining or other means, nor does the law frustrate the purpose of Congress.  As a result, we find that the NLRA does not preempt California Labor Code § 3700.

35.     Following these settled rules, an arbitration award that requires an employee to forfeit rights he would otherwise be permitted to exercise under state workers' compensation laws is contrary to law, illegal, and must be vacated.  *See United Paperworkers Int'l Union v. Allied Paper, Inc.*, Civ. No. F 86-425, 1987 WL 33822, at \*3-4 (N.D. Ind. May 29, 1987), *amended by* 1987 WL 33823 (N.D. Ind. Sept. 23, 1987) (ruling that an arbitration award reinstating an injured employee, but only on the condition that the employee would not file a workers' compensation claim, was "illegal" because Indiana law (like California law) precluded an agreement between an employer and employee for the latter to forgo workers' compensation benefits under state law). *See also, Nevada v. Contract Servs. Network, Inc.*, 873 F. Supp. 385, 392-93 (D. Nev. 1994).

Dewey & LeBoeuf LLP
333 South Grand Avenue; Suite 2600
Los Angeles, CA, 90071-1530,

COMPLAINT AND PETITION TO VACATE ARBITRATION AWARD

Dewey & LeBoeuf LLP
333 South Grand Avenue; Suite 2600
Los Angeles, CA, 90071-1530,

36.     Under this settled federal law ignored by Arbitrator Sharpe, parties to a collective bargaining agreement may not require that employees forgo accepting employee benefits mandated by state law. Indeed, the Supreme Court has made clear that federal labor law preemption cannot require that result. Yet, the Award here does precisely that. It effectively requires the California tribunal to apply Tennessee law pursuant to the purported choice of law provision, and precludes Matthews from pursuing his workers' compensation rights under California law. By erroneously purporting to strip union members who qualify for California workers' compensation benefits of their state-created rights, the Award violates basic principles of federal labor law and must be vacated.

## THE AWARD MUST BE VACATED AS CONTRARY TO

## CALIFORNIA LAW AND PUBLIC POLICY

37.     The Award is illegal under California law and clearly contrary to California public policy.

38.     California Labor Code § 3600 provides that "[l]iability for the compensation provided by this division . . . shall, without regard to negligence, exist against an employer for any injury sustained by his or her employees arising out of and in the course of the employment . . . where the following conditions of compensation concur," without regard to whether the employee belongs to a union.

39.     The statute confers a right on employees that cannot be waived through contract. *See* Cal. Labor Code § 5000.

40.     The Award, contrary to Cal. Labor Code § 5000, holds that the NFLPA and NFLMC contractually waived the right of Matthews to seek workers' compensation benefits under California Labor Code § 3600.

41.     If the Award is not vacated, Titans players who have the right under California law to seek workers' compensation will be denied that right on the basis that such rights were waived, even though the right to seek workers' compensation benefits is an unwaivable right under California law.

9

## THE AWARD VIOLATES THE FULL FAITH AND CREDIT
## CLAUSE OF THE UNITED STATES CONSTITUTION

42.     The Full Faith and Credit Clause of the United States Constitution allows California to ignore contrary laws from other states, and prohibits other states from trying to foist its laws upon California, as the Award does here.  In effectuating this unconstitutional result, the Arbitrator exceeded his authority.

43.     In *Alaska Packers*, the Supreme Court addressed the operation of the Full Faith and Credit Clause on conflicting California and Alaska statutes, where an employer sought to preclude an employee from resolving a California workers' compensation claim under California law in favor of Alaska law.  As the Court recognized, "[t]o the extent that California is required to give full faith and credit to the conflicting Alaska statute, it must be denied the right to apply in its own courts a statute of the state, lawfully enacted in pursuance of its domestic policy." *Alaska Packers*, 294 U.S. at 545.  *Alaska Packers* confirms that, under the Constitution, California, as a sovereign government, is free to apply its own workers' compensation law, even if the employee and employer agreed otherwise.  The Award violates this basic constitutional premise.

44.     In *Pac. Employers Ins. Co. v. Indus. Accident Comm'n of Cal.*, 306 U.S. 493, 59 S.Ct. 629 (1939), the Supreme Court was asked to resolve a tension between a Massachusetts statute waiving an employee's right to seek benefits in another state, and a California statute (Section 5000 – the same one here), which deemed any such waiver to be void. The Supreme Court held that, consistent with the U.S. Constitution, California law prevailed. Under *Pacific Employers,* a state may apply its own laws, and it is unconstitutional for another state to try to project its laws across state lines, even if the laws conflict.  California need not apply another state's workers' compensation law, and the Award errs in holding that it has to.  Indeed, the Award seeks to expressly project Tennessee law across state lines by requiring that Tennessee law apply to Matthews's California workers' compensation claim.  That result flatly contradicts the Supreme Court's holding in *Pacific Employers.*

Dewey & LeBoeuf LLP
333 South Grand Avenue; Suite 2600
Los Angeles, CA, 90071-1530,

45.    Significantly, the U.S. Supreme Court has recognized that Tennessee law permits Tennessee employees to file workers compensation claims in other states.   In *Ohio v. Chattanooga Boiler & Tank Co.*, 289 U.S. 439, 53 S.Ct. 663 (1933), the U.S. Supreme Court held that the "[Tennessee workers' compensation] statute does not preclude recovery under the law of another state." *Id.* at 443.   The Tennessee Supreme Court's holding in *True v. Amerail Corp.*, 584 S.W. 2d 794 (Tenn. 1979), is consistent with this proposition, as the court permitted an employee to file a workers' compensation claim under Virginia law at the exclusion of obtaining benefits in Tennessee.    *Id.* at 797-98.    Yet the Award somehow erroneously applies Tennessee law as requiring California courts to apply Tennessee law, which not only violates federal labor law, California law and the constitution, but Tennessee law as well.

46.    As the Supreme Court explained, "enforcement of the full faith and credit clause, without regard to the statute of the forum, would lead to the absurd result that, wherever the conflict arises, the statute of each state must be enforced in the courts of the other, but cannot be in its own." *Pacific Employers*, 306 at 501 (quoting *Alaska Packers*, 294 U.S. at 547).   The Award unconstitutionally and erroneously elevates the interests of Tennessee above those of California by "preclud[ing California] from prescribing for itself the legal consequences of acts within it." *Pacific Employers*, 306 U.S. at 504-05.   This is precisely what the Supreme Court ruled unconstitutional in *Pacific Employers*.

## COUNT I

### VACATUR OF ARBITRATION AWARD/BREACH OF CONTRACT

47.    Plaintiff/Petitioners repeat and reallege Paragraphs 1-46 as if set forth fully herein.

48.    Plaintiffs/Petitioners NFLPA and Bruce Matthews move to vacate the award issued by Arbitrator Sharpe on August 5, 2010.

49.    Arbitration awards may be vacated when the award runs counter to public policy and when the arbitrator exceeds the scope of his authority.  *See Sprewell*, 266 F.3d at 986; *Marrowbone Dev. Co.*, 232 F.3d at 388-89.  The Award must be vacated on these grounds.

Dewey & LeBoeuf LLP
333 South Grand Avenue, Suite 2600
Los Angeles, CA, 90071-1530,

11

50.   The Award clearly violates two important public policies. *First*, the Award makes a mockery of federal law, by ignoring Supreme Court precedent establishing that unions and management may not bargain away state-created employee rights. The Award's holding -- that Matthews bargained away the right to seek workers' compensation benefits under California law -- clearly violates these basic principles of federal labor law. *Second*, the Award violates California law and public policy, which makes clear that employees may not waive workers' compensation benefits. Despite that clear public policy, the Arbitrator ruled that the CBA constitutes a waiver of such benefits.

51.   The Arbitrator exceeded his constitutional authority by precluding the application of California law to this case in violation of the Full Faith and Credit Clause.

52.   Because the Award contravenes important public policy and the Arbitrator exceeded the scope of his authority, the Award must be vacated.

WHEREFORE, in accordance with Section 301 of the LMRA, 29 U.S.C. § 185, Plaintiffs/Petitioners request that this Court (1) vacate the Award requiring Matthews to proceed under Tennessee law, to cease and desist from attempting to persuade California tribunals from applying California law and requiring him to withdraw from the California proceeding if California tribunals refuse to apply Tennessee law, and (2) grant such other and further relief as the Court may deem just and proper.

Dated: August 9, 2010

DEWEY & LeBOEUF LLP

By: _____
Matthew M. Walsh

Attorneys for Plaintiffs/Petitioners
NATIONAL FOOTBALL LEAGUE PLAYERS
ASSOCIATION, ON ITS OWN BEHALF AND ON
BEHALF OF BRUCE MATTHEWS

LAI 261320

*Dewey & LeBoeuf LLP*
*333 South Grand Avenue; Suite 2600*
*Los Angeles, CA, 90071-1530,*

12

COMPLAINT AND PETITION TO VACATE ARBITRATION AWARD

# INDEX OF EXHIBITS

| EXHIBIT | DESCRIPTION | PAGE |
|---------|-------------|------|
| A | Arbitration Award | 13 |

LA1261323.1

**EXHIBIT A**

**NATIONAL FOOTBALL LEAGUE AND NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION**

---

In the matter of the arbitration between

NATIONAL FOOTBALL LEAGUE
MANAGEMENT COUNCIL/
TENNESSEE TITANS

and

NATIONAL FOOTBALL LEAGUE
PLAYERS ASSOCIATION/
BRUCE MATTHEWS

---

Daniel L. Nash, Attorney
Marla Axelrod, Attorney
Brook F. Gardiner, Attorney
For the NFLMC/Tennessee Titans

Richard Berthelsen, General Counsel
For the NFLPA

Calvin William Sharpe
Arbitrator/Non-Injury Panel                     August 5, 2010

In a letter dated September 12, 2008, The Tennessee Titans (Club) and the NFL Management Council (NFLMC) filed a non-injury grievance against Bruce Matthews (Player) protesting the Player's "improper filing and pursuing claims against the [Club] under the workers' compensation laws of the State of California in violation of the Player's NFL Player Contract. In a letter dated September 18, 2008, The NFL Players Association (NFLPA) on behalf of the Player denied the grievance. Being dissatisfied with earlier relief the Club has brought the matter to arbitration. A hearing was held on October 9, 2009, in Nashville, Tennessee.

I.

## STATEMENT OF THE CASE

### A.

### ISSUE

1. Did Bruce Matthews violate his Player Contract by filing a claim for workers' compensation benefits in California and requesting that the claim be processed under California law?

2. If so, what is the appropriate remedy?

### B.

### RELEVANT PROVISIONS OF THE 1999-2003 PLAYER CONTRACT

22 . LAW. This contract is made under and shall be governed by the laws of the State of TENNESSEE.

26D.   Jurisdiction of all workers compensation claims and all other matters related to workers compensation, including but not limited to the matters recited in Numbered Paragraph 10 hereof, and including all issues of law, issues of fact, and matters related to workers compensation benefits, shall be exclusively determined by and exclusively decided in accordance with the internal laws of the State of Tennessee without resort to choice of law rules. This paragraph shall have no

2

application to injury, if any, sustained by Player after this contract is assigned by
waiver or trade to another club domiciled outside of the State of Tennessee.

RELEVANT PROVISIONS OF THE 2006-2012 COLLECTIVE BARGAINING
AGREEMENT

Article IX, Section 8. Arbitrator's Decision and Award. . . . The decision of the arbitrator
will constitute full, final and complete disposition of the grievance, and will be binding
upon the player(s) and Club(s) involved and the parties to this Agreement; provided ,
however , that the arbitrator will not have the jurisdiction or authority: . . . (b) to grant
any remedy other than a money award, an order of reinstatement, suspension without pay,
a stay pending the decision, a cease and desist order, a credit or benefit award under the
Bert Bell/Pete Rozell NFL Player Retirement Plan, or an order of compliance, with a
specific term of this Agreement or any other applicable document, or an advisory opinion
pursuant to Article XIII (Committees), Section 1(c).

Appendix C

19.DISPUTES.  During the term of any collective bargaining agreement, any dispute
            between Player and Club involving the interpretation or application of any
provision of this contract will be submitted to final and binding arbitration in accordance
with the procedure called for in any collective bargaining agreement in existence at the
time the event giving rise to any such dispute occurs.

## C.

## BACKGROUND FACTS

The Player played for the Club and its predecessors, the Tennessee Oilers and the Houston

Oilers for 19 NFL seasons (1983-2002) before retiring.  At the end of his tenure with the Club

the Player had been one of the Club's and NFL's greatest players having played in 296 NFL

games, been selected to 14 consecutive Pro Bowls, and been inducted into the Pro Football Hall

of Fame in 2007.

On April 8, 2008, the Player filed a workers compensation claim before the Workers'

Compensation Appeals Board (WCAB) in the State of California. As already noted, the Club

filed a grievance on September 12, 2008.  In February 2009, the Club petitioned the WCAB to

dismiss the Player's claim or defer to arbitration on the grounds that the Player's claim violated

3

the forum selection clause in the Player Contract. The Player opposed the Petition in a brief filed with the WCAB on March 23, 2009. This arbitration proceeds, apparently, as the California WCAB case is pending.

## II.

## CONTENTIONS OF THE PARTIES

### A. THE CLUB'S POSITION

The Club seeks a cease and desist order that would prevent Matthews from proceeding in a California tribunal for workers' compensation benefits under California law as well as damages equal to the cost of defending his California claim. The Club contends that Matthews "breached the clear terms of his NLF Player Contract by filing a claim for workers' compensation benefits" and seeking that those benefits be determined under California law. The Club cites Paragraphs 22 and 26D of the Contract as plainly and unambiguously requiring Matthews to file such claims in Texas or Tennessee to be determined under Texas or Tennessee law. Claiming that Matthews cannot excuse his breach by arguing that the relevant contractual provisions are choice of law rather than choice of forum provisions, the Club ultimately argues that Matthews' claim for benefits under California law makes this distinction irrelevant.

Specifically, the Club cites Paragraph 26D containing language limiting the jurisdiction and determination of workers compensation claims to the laws of Tennessee "without resort to choice of law rules." The Club also cites Paragraph 22 as more generally providing that the Contract was "made under and shall be governed by the laws of the state of Tennessee." According to the Club, it is Matthews' filing for workers' compensation benefits under the laws of California that breaches both provisions.

To Matthews' claim that Paragraph 26D is only a choice of law provision and excuses his

4

filing in California, the Club says that Paragraph 26D is a choice of forum provision that

prevented the filing in California.  Moreover, the Club continues quoting the "under California

law" language from Matthews' application for workers compensation benefits, Matthews is

filing for benefits under California law rather than Tennessee or Texas law.  As a matter of

contract interpretation, the Club maintains that, construed as a choice of law provision,

Paragraph 26 D would render Paragraph 22 meaningless and fail to give effect to all contractual

provisions as preferred by a well-settled principle of contract interpretation.

Noting the concession of Matthews' Counsel at the hearing that Paragraphs 22 and 26D

are choice of law provisions, the Club argues that Tennessee and Texas law require enforcement

of the contractual choice of forum and choice of law provisions.  Specifically, the Club argues

that under both Tennessee and Texas law choice of forum clauses are enforced if reasonable.

The Club quotes the following language from a 2008 Tennessee appellate court case:

"The validity of a forum selection clause depends on whether it is fair and reasonable in light of

all the surrounding circumstances attending its origins and application."  Based on the cases the

Club also maintains that parties seeking to invalidate such a clause "bear a heavy burden" of

presenting evidence to overcome the presumption of validity. Unreasonable or unjust agreements

and invalid clauses due to fraud or overreaching are examples of the requisite evidence.  The

Club argues that Paragraph 26D in Matthews' agreement is reasonable, because he resided in

Texas and Tennessee for 20 years, and there is no evidence of overreaching or fraud.

Similarly, the Club argues that the choice of law provision calling for the application of

Tennessee and Texas law is enforceable, if made in good faith.  Elaborating, the Club notes that

Tennessee and Texas "bear a material" connection to Matthews and in applying the following

five Restatement (Second) of Conflict of Laws factors argues that no other state has a "materially

5

17

greater interest." The five Restatement factors are [the Player's] residence, the performance of his contract, the Club's location, the locus of the negotiation and signing of the contract.

The Club challenges the Player's reliance on the California law that depriving employees of California workers compensation benefits is unenforceable under California law, claiming both that California law is irrelevant and that it would not alter the Player's obligation under the contract, even if it were relevant. The Club cites the *Alaska Packers Ass'n v. Industrial Accident Commission of California*, 294 U.S. 532 (1935), for example, as distinguishable from the instant case because of [the Player's] residency and work in Texas and Tennessee and the absence of evidence that he would be left without a remedy in Tennessee or Texas. The Club also distinguishes the *Contract Services Network, Inc. v. Aubry*, 62 F.3d 294 (9th Cir. 1995), case as considering different issues from those presented in this case.

The Club rejects the Player's argument that enforcing the two contractual provisions at issue would require him to forgo workers compensation benefits in California violating the "well-settled law that employers cannot deprive employees of minimum health and safety benefits provided by states, including workers compensation benefits." On the contrary, the Club argues that the Player's agreement is to forgo all forums except Tennessee and Texas, not to forgo the benefits.

The Club also answers the Player's argument that Paragraphs 22 and 26D lacked his assent and adequate consideration and that Tennessee law allows him to seek benefits in California. The Club's rejoinder is that the Player was a sophisticated negotiator who understood the terms of the agreement and that Hornbook law recognizes consideration, where a benefit such as the Player's receipt of tens of millions of dollars during this 20 years with the team and a detriment are sufficient consideration.

6

The Club's second major argument is that the Collective Bargaining Agreement (CBA) and the law of the shop require enforcement of the Player's contractual promises. The Club cites contractual language limiting the Arbitrator to the provisions of the Agreement as well as NFL/NFLPA and non-NFL/NFLPA arbitration cases addressing workers compensation issues. It argues:

> These cases make clear that state workers' compensation laws cannot interfere with the Arbitrator's enforcement of [the Player's] NFL Player Contracts. In particular, a finding that the Player has not breached the terms of his contract based on California workers' compensation law would contravene settled NFL precedent.

In the Club's view, the CBA authorizes the Arbitrator to require the Player to cease and desist from breaching his Player Contract. Again, the Club cites NFL arbitration precedent holding that a cease and desist order is appropriate, where "a party's action under a state workers' compensation law contravenes the requirements in the CBA."

B. THE PLAYER'S POSITION

On the other hand, the NFLPA on behalf of the Player urges the summary denial of the grievance claiming that Article 26D of the Player's Contract "is at most a 'choice of law' clause." In the Player's view, Article 26D only requires that Tennessee workers compensation laws be applied to a player's claim; it does not require that Tennessee be the exclusive forum for such claims. Moreover, the Player continues, since Tennessee law itself permits workers to file workers compensation claims in other states, the Player's California filing does not breach the Contract.

The Player insists that a contrary finding would contravene the law of California and federal court decisions. The Player also cites *Alaska Packers* for the proposition that "an individual employee may not waive statutory protections designed to promote the health and

7

safety of employees in California." (emphasis in original) In the Player's view, the statutory provision at issue in *Alaska Packers* is also applicable in this case and binds the Arbitrator in this case as it bound Chief Justice Brandeis in that case.

Detailing its choice of law argument, the Player argues that the Club's effort to deprive him of his right to file for workers compensation benefits is based on the "most flimsy grounds" that Paragraph 26D of the Player Contract is a choice of forum clause that waives the Player's right to file for benefits outside the state of Tennessee. The Player notes the difference between choice of forum (requiring filing in a particular state) and choice of law (requiring the application of a particular state's law) provisions. Quoting the language of Paragraph 26D the Player claims that the provision is on its face a choice of law rule requiring application of Tennessee law rather than a choice of forum provision. Importantly, the Player adds that as a choice of law term: "Any state court can apply the 'internal laws of the state of Tennessee,' should it choose to do so consistent with its own choice of law rules."

The Player then suggests language that could have been used to create a choice of forum provision. In the absence of such language, the Player maintains, he is entitled to file the claim in California or any other state. Under the Player's interpretation the California court would then decide whether to apply Tennessee law based on relational or other considerations as well as the policy of California. The Player also announces his intent to argue that even the choice of law provision is contrary to California public policy, and the California court's decision on this question should receive the Arbitrator's deference. The Player claims that past decisions of NFL arbitrators regarding a player's benefits entitlement are consistent with such deference.

Next, the Player argues that Tennessee law fully supports his filing of the claim in California. In support of this proposition the Player cites *Ohio v. Chattanooga Boiler 7 Tank*

8

*Co.*, 289 U.S. 439 (1933)(employee filing and recovery in Ohio deemed permissible under the Tennessee statute) and *True v. Amerail Corp.*, 584 S.W. 2d. 794 (Tenn. 1979)(employee's receipt of workers compensation benefits in Virginia permissible and preclusive of recovery also in Tennessee) affirming the right of Tennessee employees to file in other states.

Finally, the Player argues that the law of the land as enunciated in *Alaska Packers* does not permit him to waive his right to workers compensation benefits in California. Citing California Code Section 5000 prohibiting a "contract, rule or regulation" exempting an employer from liability for workers compensation benefits, the Player argues that this provision in California, replicated in many states, has been interpreted by state and federal courts as an inflexible rule or minimum labor standard preventing employers, employees and unions from agreeing to prevent otherwise eligible employees from securing workers compensation benefits in California.

In support of this argument the Player cites four Supreme Court cases, *Alaska Packers* (1934 )(employee who signed an employment contract in California was injured in Alaska); *Pacific Employers Insurance Co. v. Industrial Accident Commission of California*, 306 U.S. 493 (1939)(Massachusetts employee injured in California); *Metropolitan Life Ins. Co. v. Commonwealth of Mass*, 471 U.S. 724 (1985)(collective bargaining agreement did not preempt minimum health standards established under state law); and *Livadas v. Bradshaw*, 512 U.S. 107 (1994)(preemption doctrine does not extend to supplanting state employee benefits rights with collectively bargained employee benefits); a Ninth Circuit case *Contract Services Network, Inc. v. Aubry*, 62 F.3d 294 (9th Cir. 1995)(workers compensation benefits formula under a collective bargaining agreement did not preempt the California Workers Compensation statute); a professional football case *Brache vv. Tampa Bay Storm*, (Case No. ADJ1908964)(Court

9

disallowed waiver of benefits under California law for player injured in California, where the

collective bargaining agreement purported to waive the right to workers compensation benefits

outside the state of Florida); and a California Workers Compensation Judge's decision in *Vaughn*

*Booker v. Cincinnati Bengals* (October 6, 2009)(Judge refused to enforce the Ohio choice of

forum and law clauses in the player's contract to prevent the player from filing a workers

compensation claim in California citing Section 5000 of the California Labor Code).

> In the Player's view:

> Surely, if the state of California is willing to strike down an NFL player contract clause
> which purports to require a player to both file in the club's home state (choice of forum)
> and be exclusively governed by its laws (choice of law), it would certainly do so in [the
> Player's] case, where only a choice of law clause exists in his contract.

The Player concludes that a contrary arbitral ruling in this case would violate California public

policy and require vacatur of the Award.

## III.

## DISCUSSION AND OPINION

### *Paragraph 26D of the NFL Player Contract*

The central issue in this case is whether Paragraph 26D of the NFL Player Contract is a

choice of forum clause that would  prevent the Player from filing a workers compensation claim

California, or a choice of law clause requiring the application of Tennessee law but not the filing

of a claim exclusively in Tennessee.  Both choice of forum and choice of law clauses recognize

the autonomy of contracting parties to limit forum and choice of law decisions in an effort

protect the parties' expectations and further predictability.[1]  Choice of forum clauses specify a

venue for resolving disputes and may be exclusive or non-exclusive, while choice of law clauses

---

[1]Eugene F. Scoles et. al. CONFLICT OF LAWS, pp. 467, 478 , and 857, 3rd ed. (West 2000)

select the law to be applied by a forum. Moreover, a choice of forum clause may be deemed to

imply a choice of the selected forum's law; but a choice of law clause without more does not

imply a selection of the law's forum for jurisdictional purposes.[2]

With the following observations a leading treatise makes the point that the drafting of

forum clauses leads to problems of interpretation:

> With astonishing frequency, parties have drafted clumsy clauses that are unclear as to
> what effect is intended, leaving [decision makers] with difficult questions of
> interpretation.
>
> * * *
>
> Most difficulties related to the scope and interpretation of forum clauses can be avoided
> by careful drafting . . . .[3]

Although some of the interpretive issues focus on whether a forum clause is exclusive or non-

exclusive, the current controversy presents the question of whether as a threshold matter the

clause is a choice of forum or choice of law clause.

Paragraph 26D of the Player's Contract in this case provides:

> Jurisdiction of all workers compensation claims and all other matters related to workers
> compensation, including but not limited to the matters recited in Number Paragraph 10
> hereof, and including all issues of law, issues of fact, and matters related to workers
> compensation benefits, shall be exclusively determined by and exclusively decided in
> accordance with the internal laws of the State of Tennessee without resort to choice of
> law rules.

Paragraph 26D makes no reference to forum. Rather, it says that "jurisdiction" and all matters

related to workers compensation benefits shall be "determined by and . . . exclusively decided in

accordance with" Tennessee law. While this language reflects the parties' intention to have all

---

[2]*Id.* at 858-859. But see *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 482
(1985)(acknowledging that a choice of law provision standing alone is insufficient to confer
jurisdiction, but holding that it may do so when combined with other factors).

11

questions surrounding workers compensation claims decided exclusively under Tennessee law, it does not provide that Tennessee shall be the exclusive forum for such claims. Contributing to the awkwardness of the provision is insertion of the term "jurisdiction," which normally refers to an appropriate forum rather than the applicable law. Arguably, the mere presence of the term in Paragraph 26D might suggest the parties' assent to Tennessee as the exclusive forum for workers compensation disputes.[4] However, Paragraph 26D does not say that Tennessee will have exclusive jurisdiction over workers compensation claims. Rather, it says that jurisdiction is among the issues in workers compensation cases that will be decided by and in accordance with Tennessee law.[5] As the Player points out, Tennessee law does not claim exclusive jurisdiction for itself in workers compensation cases. On the contrary, it permits workers to file workers compensation claims in other states.[6] These factors lead to the conclusion that Paragraph 26D is a choice of law and not a choice of forum provision. Accordingly, the Player is not precluded under the Contract from filing his workers compensation claim in California.[7]

---

[3] *Id.* at 467, 478.

[4] *Id.* at 334-336.

[5] For an example of a clearly drafted choice of forum clause, see Addendum No. 3 of the Player Contract between Khalid Abdullah and the Cincinnati Bengals, Inc., which reads in part:

> Player further agrees that any claim, filing, petition, or cause of action in any way relating to workers' compensation rights or benefits arising out of Player's employment with the Club, including without limitation the applicability or enforceability of this addendum shall be brought solely and exclusively with the courts of Ohio, the Industrial Commission of Ohio, or such other Ohio tribunal that has jurisdiction over the matter.

[6] See *Chattanooga Boiler & Tank Co.*, 289 U.S. 439, 443 (1933)(holding that "the Tennessee statute does not preclude recovery under the law of another state.")

[7] In light of this ruling the cases cited by the Club for the proposition that Tennessee law requires the enforcement of forum selection clauses are rendered inapposite. Similarly, *Alaska Packers* and *Welch v. Nightingale Nurses, LLC*, 2009 Tex. App. LEXIS 3822, (Tex. Ct. App. 2009) grapple with questions concerning forum selection clauses rather than choice of law

12

Pointing to the language in Paragraph 22 providing that the contract is "made under" and "governed by" Tennessee law, the Club asserts that to treat Paragraph 26D as merely a choice of law provision would render Paragraph 22 "superfluous and fail to give effect to all of the provisions in the contract."[8]   The Club cites WILLISTON ON CONTRACTS and attempts to draw support for this argument from the interpretive maxim: "an interpretation which gives effect to all provisions of the contract is preferred to one which renders a portion of the writing superfluous, useless or inexplicable."[9]

The Club's argument is grounded in well-settled contract doctrine.[10]   However, issues about the Contract as well as its various terms other than Paragraph 26D may occasion the application of state law---from standards to be applied to determine questions of contract formation and validity to what might constitute a felony for purposes of Paragraph 4 of the exclusions under Appendix 1. Paragraph 22 serves a useful function beyond  the parameters of Paragraph 26D by eliminating choice of law disputes whenever contractual provisions call for the application of state law.  Being aware, perhaps,  of another interpretive maximum–"specific terms and exact terms are given greater weight than general language"---the parties in the detailed choice of law provision of Paragraph 26D emphasize their intended resolution of the

---

clauses.

[8]In its entirety Paragraph 22 reads: "This contract is made under and shall be governed by the laws of the state of Tennessee."

[9]Section 32.5 (4th ed. 2009).

[10]See Section 203 of the Restatement of Contracts (2d)(ALI 1981).  Comment b states:

Where an integrated agreement has been negotiated with care and in detail and has been expertly drafted for the particular transaction, an interpretation is very strongly negated if it would render some provision superfluous.

13

choice of law issue in the contentious area of recurring workers compensation cases.[11]     From

this perspective Paragraph 22 is hardly rendered superfluous by a finding that Paragraph 26D is a

choice of law provision.

However, the finding that Paragraph 26D of the Player's Contract is a choice of law

provision does not end the inquiry. As the Player argues:

> In the absence of a choice of forum provision, [the Player] is, of course, entitled to
> file a claim in California . . . . It is then up to the Titans to argue, in California . . . that
> [the Player's] claim ought to be decided 'in accordance with the internal laws of the State
> of Tennessee without resort to choice of law rules.'  In turn, California courts may, or
> may not, apply Tennessee law. . . . Here, [the Player] will argue that the choice of law
> clause is contrary to California public policy, while the Titans will take the opposite
> view.

The Player also sets forth the test applied in California to determine whether it will apply the

parties' chosen law of a foreign jurisdiction.

Even though the Player is correct in asserting that his California filing "does not run afoul

of Paragraph 26D" and make it necessary for him to withdraw with prejudice, the Player

acknowledges that Paragraph 26D creates a choice of law agreement.  It is clear that California's

treatment of choice of law provisions creates the real possibility that a California tribunal  may

reject Tennessee law contrary to the parties' intention as reflected in Paragraph 26D.  While the

Player's Contract does not control California's application of its own law, it does control the

conduct of the parties. As the parties' contract reader, the Arbitrator's responsibility is to

interpret and enforce the contractual obligations undertaken by the parties. In

the instant Player Contract the Player promised to resolve workers compensation claims under

---

[11]See *Id.* at Section 203(c).  Paragraph 10 of the Player's Contract is another provision
that seeks to addresses clearly a specific issue that recurs in workers compensation cases.

14

Tennessee law.   Given the possibility that a California tribunal may choose to apply California law despite the parties agreement in Paragraph 26D, what does the choice of law clause require of the parties?

The Player's argument that it will fall upon the Titans to argue that Tennessee law should be applied and the Player to argue that California law and not Tennessee law should apply would be unfaithful to the Player's obligation under Paragraph 26D to apply Tennessee law.  Because the promise in Paragraph 26D is a mutual obligation, the Player and Club are equally responsible for assuring the application of Tennessee law.  Thus, the Player's argument before the California tribunal for the application of California law violates Paragraph 26D of the Player's Contract.[12]

*Remedy*

Article IX, Section 8 of the Collective Bargaining Agreement authorizes the Arbitrator to grant a cease and desist remedy, and Appendix C, Paragraph 19 of the Agreement calls for the submission of disputes under the Player Contract to final and binding arbitration under the procedure set forth in the Collective Bargaining Agreement.[13] In light of the mutual obligation of the Club and Player to apply Tennessee law under Paragraph 26D, it is appropriate for the Club and the Player to stipulate to the application of Tennessee law before California tribunals, even on the question of whether the choice of law provision itself should be enforced. If the California tribunal refuses to accept the stipulation and rules that Tennessee law will not be applied, the parties should withdraw barring the availability of further relief in the California

---

[12] See *Applicant's Opposition To Defendants' Petition For Dismissal* brief to  the WCAB (March 23, 2009)

[13]See *NFLPA v. NFLMC/Dallas Cowboys and Houston Texans* (where Arbitrator Das issued a cease and desist order against the Texas clubs who violated the collective bargaining agreement by taking action that conformed to the provisions of state law rather than the

15

judicial system.

The Player argues that the Arbitrator should defer to the California Court on the question
of whether to apply Tennessee law. In support of this position the Player cites *Cincinnati
Bengals, Inc. v. Khalid Abdullah, et. al.* Case No. 1:09-cv-738 (S.D. Ohio 2010). That case
involved a suit by the Cincinnati Bengals against six of their former players to enjoin them from
seeking workers compensation benefits in the State of California. The Bengals alleged that
choice of forum and choice of law clauses required the players to file any workers compensation
claim in Ohio under Ohio law. The Bengals also sought a declaratory judgment enforcing the
contractual provision. An Ohio state court had granted the Bengals a temporary restraining
order, preliminary injunction and default judgments against some of the players before the
players removed the case to federal court.

The Player cites the following language from the Ohio federal court's opinion:

> The judgments purport to enjoin Defendants [players] from breaching their contracts by
> 'seeking and receiving relief' under any other states workers' compensation laws.
> Defendants apparently have a right to do so in California . . . While the Bengals are
> challenging the merits of those claims under California law, those legal challenges will be
> determined by the California tribunals, not by this Court.

In the Player's view, this federal court ruling supports his position that "the California courts
should be allowed to determine whether the players may pursue claims for benefits in California
tribunals under California law." Noting the Ohio federal court's characterization of the Bengals'
suit as an improper "collateral attack on the California tribunal's favorable rulings," the Player
urges that the Arbitrator not seek to overrule the California courts.

However, two other aspects of the Ohio federal court's decision are noteworthy. First,
the Court set aside the default judgments against the players in part because of the applicability

---

agreement).

16

of the contract's arbitration clause. Second the Court specifically addressed as follows the

parties' duty to arbitrate the dispute about whether the players complied with the choice of

forum/choice of law clause:

> . . . Addendum No. 3 to the Players Contract (the choice of law/choice of forum clause giving rise to this dispute) is separately signed by both the player and a Bengals representative. There is nothing in that addendum exempting its terms from the contract's very broad and unambiguous arbitration clause, which applies to any dispute about 'compliance' with any of the contract's terms and conditions.
>
> The Bengals argue that NFL arbitrators will not decide issues of state law, which will leave them without a remedy for what they now allege is Defendants' violation of Ohio law. Addendum 3 does not refer to any Ohio legal requirements or the Ohio statute which the Bengals allege has been violated. The addendum contains the parties' agreement on the proper forum for a workers compensation claim. This Court previously concluded that the resolution of the Bengals' claims requires the interpretation of Addendum 3. The second amended complaint does not change that conclusion. In Section 301 cases, a 'strong presumption of arbitrability' applies to disputes arising under a collective bargaining agreement containing a broad arbitration clause. . . . That strong presumption fully applies here.[14]

The Ohio federal court leaves little doubt that the deference suggested in the language quoted by

the Player operates judicially between the Ohio and California tribunals on the determination of

workers compensation claims filed initially in California. The Ohio Court also clearly

recognizes the Arbitrator's subject matter jurisdiction and grants the players' motion to compel

arbitration on the question of whether players breached the player contracts by filing for workers

compensation in California rather than Ohio. In this respect the Ohio federal court decision fully

supports the Arbitrator's jurisdiction in this case to determine liability and the appropriate

remedy.

---

[14]Slip Opinion pages 24-25.

17



IV.

AWARD

For reasons fully set forth in the preceding section the grievance is denied in part and sustained in part. The Player is not precluded under Paragraph 26D from filing his workers compensation claim in California. However, the Player is required to proceed under Tennessee law, and accordingly shall cease and desist from attempting to persuade the California tribunals to apply California law in violation of Paragraph 26D of the Player's Contract. Further, under this order  the Player is required to withdraw from the California proceeding, should the California tribunals ultimately deny the application of Tennessee law.       The arbitrator will retain jurisdiction until the Player has complied with the cease and desist order and the California tribunals have determined the applicable law.

_____          _____

CALVIN WILLIAM SHARPE                          DATE
ARBITRATOR

18

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION, on its own behalf and on behalf of BRUCE MATTHEWS

**DEFENDANTS**
NATIONAL FOOTBALL LEAGUE MANAGEMENT COUNCIL and TENNESSEE TITANS,

FILED
'10 AUG -9 PM 4: 17

**(b)** County of Residence of First Listed Plaintiff **Washington, D.C.**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
DEWEY & LeBOEUF LLP
Matthew M. Walsh (SBN 175004)
333 S. Grand Avenue, Suite 2600
Los Angeles, California 90071
Tel: 213-621-6000; Fax: 213-621-6100
email: mwalsh@dl.com

Attorneys (If Known)

'10 CV 1671   JLS  WMC

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | | | |
|---|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 | Federal Question (U.S. Government Not a Party) |
| ☐ 2 | U.S. Government Defendant | ☐ 4 | Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury — | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | **LABOR** | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | ☒ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | & Disclosure Act | | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | Security Act | ☐ 871 IRS—Third Party | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | 26 USC 7609 | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities – | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | **IMMIGRATION** | | to Justice |
| | ☐ 446 Amer. w/Disabilities – | ☐ 555 Prison Condition | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of |
| | Other | | ☐ 463 Habeas Corpus – | | State Statutes |
| | ☐ 440 Other Civil Rights | | Alien Detainee | | |
| | | | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. § 1331; 29 U.S.C. § 185

Brief description of cause:
Petition to Vacate Arbitration Award.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $   CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE
August 9, 2010

SIGNATURE OF ATTORNEY OF RECORD
Matthew M. Walsh, Esq.

**FOR OFFICE USE ONLY**
RECEIPT # 16762   AMOUNT $350   APPLYING IFP 8/9/10 84   JUDGE _____   MAG. JUDGE _____

American LegalNet, Inc.
www.FormsWorkflow.com



```
Court Name: USDC California Southern
Division: 3
Receipt Number: CAS016762
Cashier ID: bhartman
Transaction Date: 08/09/2010
Payer Name: SAN DIEGO LEGAL SUPPORT SVCS
--------------------------------
CIVIL FILING FEE
 For: NFLPA V NFL MGMT COUNCIL
 Case/Party: D-CAS-3-10-CV-001671-001
 Amount:        $350.00
--------------------------------
CHECK
 Check/Money Order Num: 92202
 Amt Tendered:  $350.00
--------------------------------
Total Due:      $350.00
Total Tendered: $350.00
Change Amt:     $0.00


There will be a fee of $45.00
charged for any returned check.
```