REX S. HEINKE (SBN 066163)
rheinke@akingump.com
L. RACHEL HELYAR (SBN 193080)
rhelyar@akingump.com
JOHANNA R. SHARGEL (SBN 214302)
jshargel@akingump.com
**AKIN GUMP STRAUSS HAUER & FELD LLP**
2029 Century Park East, Suite 2400
Los Angeles, California 90067
Telephone:      310.229.1000
Facsimile:      310.229.1001

DANIEL L. NASH (admitted *pro hac vice*)
dnash@akingump.com
**AKIN GUMP STRAUSS HAUER & FELD LLP**
1333 New Hampshire Avenue, N.W.
Washington, DC 20036
Telephone:      202.887.4000
Facsimile:      202.887.4288

Attorneys for Defendants/Respondents
National Football League Management Council
and Tennessee Titans

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION, on its own behalf and on behalf of BRUCE MATTHEWS,<br><br>Plaintiffs/Petitioners,<br><br>v.<br><br>NATIONAL FOOTBALL LEAGUE MANAGEMENT COUNCIL and TENNESSEE TITANS,<br><br>Defendants/Respondents. | Case No. 10-CV-1671-JLS-WMc<br><br>**DEFENDANTS' OPPOSITION TO MATTHEWS' AMENDED MOTION TO VACATE ARBITRATION AWARD**<br><br>Date:      January 7, 2011<br>Time:      3:00 p.m.<br>Ctrm:      6<br>Judge:      Janis L. Sammartino |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.  INTRODUCTION ...................................................................................................1

II. ARGUMENT ........................................................................................................2

    A.  California Law Does Not Preclude A Non-Resident Employee Who Enters Into A Contract In Tennessee From Agreeing To Apply Tennessee Law To His Workers' Compensation Disputes.. ...........................................................................2

    B.  Because There Is No Explicit Conflict Between California Law And The Arbitration Award, The Award Should Be Confirmed. ....................................7

        1.  Arbitrator Sharpe's award does not violate "explicit, well defined and dominant" public policy. ................................................................7

        2.  Arbitrator Sharpe's award does not ignore "well defined, explicit, and clearly applicable" law. ..................................................................9

    C.  Federal Labor Law Poses No Obstacle To The Arbitration Award. ...............12

    D.  Matthews' Full Faith And Credit Arguments Are Unavailing. .......................13

CONCLUSION.........................................................................................................16

1

2

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Alaska Packers Ass'n v. Indus. Accident Comm'n of Cal.,*
   294 U.S. 532 (1935)................................................................................passim

*Allstate Ins. Co. v. Hague,*
   449 U.S. 302 (1981)........................................................................................ 15

*American Postal Workers Union AFL-CIO v. U.S. Postal Service,*
   682 F.2d 1280 (9th Cir. 1982) ..................................................................... 8, 9

*Ariz. Elec. Power Coop., Inc. v. Berkeley,*
   59 F.3d 988 (9th Cir. 1995).......................................................................... 8, 9

*Bear, Stearns & Co. v. Buehler,*
   432 F. Supp. 2d 1024 (C.D. Cal. 2000)......................................................... 10

*Cal. Pac. Med. Center v. Serv. Emp. Int'l Union,* No. C 06 4685 SC,
   2007 WL 81906 (N.D. Cal. Jan. 9, 2007) ....................................................... 8

*Carter v. Health Net of Cal., Inc.,*
   374 F.3d 830 (9th Cir. 2004) ........................................................................ 10

*Collins v. D.R. Horton, Inc.,*
   505 F.3d 874 (9th Cir. 2007)........................................................... 1, 10, 11, 12

*Comedy Club, Inc. v. Improv West Associates,*
   553 F.3d 1277 (9th Cir. 2009) ................................................................... 9, 11

*Contract Services Network, Inc. v. Aubry,*
   62 F.3d 294 (9th Cir. 1995)........................................................................... 12

*Gas Aggregation Servs., Inc. v. Howard Avista Energy, LLC,*
   319 F.3d 1060 (8th Cir. 2003) ...................................................................... 11

*Gonzales v. Dep't of Homeland Sec.,*
   508 F.3d 1227 (9th Cir. 2007) ........................................................................ 9

*Granite Rock Co. v. Int'l Bhd. of Teamsters,*
   130 S. Ct. 2847 (2010)..................................................................................... 9

*International Longshoremen's Association v. Seatrain Lines, Inc.,*
   326 F.2d 916 (2d Cir. 1964) ......................................................................... 12

*Luong v. Circuit City Stores, Inc.,*
   368 F.3d 1109 (9th Cir. 2004) ...................................................................... 12

*Metropolitan Life Ins. Co. v. Massachusetts,*
   471 U.S. 724 (1985)....................................................................................... 12

*Mich. Mut. Ins. Co. v. Unigard Sec. Ins. Co.,*
   44 F.3d 826 (9th Cir. 1995)........................................................................... 12

*National Football League Players Ass'n v. Pro-Football, Inc.*,
   857 F. Supp. 71 (D.D.C. 1994) ................................................................. 8

*New United Motor Mfg. Inc. v. United Auto Workers Local 2244*,
   617 F. Supp. 2d 948 (N.D. Cal. 2008) ...................................................... 9

*New York Tel. Co. v. Communications Workers of Am. Local 1100*,
   256 F.3d 89 (2d Cir. 2001) ........................................................... 8, 11, 12

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985)................................................................................. 15

*Sakamoto v. Duty Free Shoppers, Ltd.*,
   764 F.2d 1285 (9th Cir. 1985) ................................................................. 9

*San Martine Compania De Navegacion, S.A. v. Saguenay Terminals Ltd.*,
   293 F.2d 796 (9th Cir. 1961) ....................................................... 10, 11, 12

*State of Ohio v. Chattanooga Boiler & Tank Co.*,
   289 U.S. 439 (1933) ................................................................................ 15

*Toyota Motor Mfg., Inc. v. Williams*,
   534 U.S. 184 (2002) ................................................................................ 12

*United Food & Commercial Workers Int'l Union, Local 588 v. Foster Poultry Farms*,
   74 F.3d 169 (9th Cir. 1995) ...................................................................... 7

*United Paperworkers Int'l Union v. Allied Paper, Inc.*, No. F 86-425,
   1987 WL 33822 (N.D. Ind. May 29, 1987) .............................................. 6

*United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*,
   484 U.S. 29 (1987).......................................................................... 7, 8, 9

*United Transp. Union v. United Pacific R.R. Co.*,
   116 F.3d 430 (9th Cir. 1997) .................................................................... 9

*Veliz v. Cintas Corp.*, No. C 03-1180,
   2009 WL 1766691 (N.D. Cal. June 22, 2009) ........................................ 11

**CALIFORNIA STATE CASES**

*1-800-Got Junk? LLC v. Superior Court*, No. B221636,
   2010 WL 4119245 (Cal. App. Oct. 21, 2010) ...................................... 1, 3

*Alaska Packers Ass'n v. Indus. Accident Comm'n of Cal.*,
   1 Cal. 2d 250 (1934) ........................................................................passim

*All One God Faith, Inc. v. Organic and Sustainable Industry Standards, Inc.*,
   183 Cal. App. 4th 1186 (2010).................................................................. 3

*Benguet Consol. Min. Co. v. Indus. Accident Comm'n*,
   36 Cal. App. 2d 158 (1940)...................................................................... 6

*Bowen v. Workers' Comp. Appeals Bd.*,
   73 Cal. App. 4th 15 (1999)....................................................................... 6

*County of San Luis Obispo v. Workers' Comp. Appeals Bd.*,
    133 Cal. App. 4th 641 (2005) ........................................................................... 7

*Hines v. Indus. Accident Commission*,
    182 Cal. 359 (1920) ........................................................................................... 6

*Nedlloyd Lines B.V. v. Superior Court*,
    3 Cal. 4th 459 (1992) ........................................................................................ 3

*Pacific Employers Ins. Co. v. Industrial Acc. Comm'n*,
    10 Cal. 2d 567 (1938) ........................................................................... 13, 14, 15

*People v. Jennings*,
    50 Cal. 4th 616 (2010) ...................................................................................... 5

*Priceline.com Inc. v. City of Anaheim*,
    180 Cal. App. 4th 1130 (2010) ......................................................................... 5

*Sec. Pac. Nat'l Bank v. Wozab*,
    51 Cal. 3d 991 (1990) ....................................................................................... 5

*State Water Resources Control Bd. Cases*,
    136 Cal. App. 4th 674 (2006) ........................................................................... 7

*Wenke v. Hitchcock*,
    6 Cal. 3d 746 (1972) ......................................................................................... 7

**TENNESSEE STATE CASES**

*Goodwin Bros. Leasing, Inc. v. H&B Inc.*,
    597 S.W.2d 303 (Tenn. 1980) ........................................................................ 15

*True v. Amerail Corp.*,
    584 S.W.2d 794 (Tenn. 1979) ........................................................................ 15

*Vantage Tech., LLC v. Cross*,
    17 S.W.3d 637 (Tenn. Ct. App. 1999) ............................................................ 15

**STATUTES**

Cal. Bus. & Prof. Code § 16600 ................................................................................. 11

Cal. Lab. Code § 2804 ....................................................................................... 2, 3, 4, 8

Cal. Lab. Code § 5000 ................................................................................................ passim

9 U.S.C. § 10 ................................................................................................................... 9

15 U.S.C. § 7311 ............................................................................................................ 8

Va. Code Ann. §40.1-62 ................................................................................................ 8

# I.     **INTRODUCTION**

Matthews argues that the arbitration award requiring him to honor his contractual agreement to resolve workers' compensation disputes under the law of Tennessee should be vacated on the grounds that it "offends California public policy," is in "manifest disregard" of the law, violates federal labor law, and "is inconsistent with the Full Faith and Credit Clause of the U.S. Constitution." Matthews is wrong on all counts.

First, as set forth in Defendants' Motion to Confirm Arbitration Award ("Motion to Confirm"), Matthews cannot meet the stringent requirements for establishing that vacatur is warranted on public policy grounds because there is no California policy that proscribes non-residents who enter into employment contracts outside of California from agreeing to resolve their workers' compensation disputes under the law of another state. As the California Court of Appeal recently confirmed in *1-800-Got Junk? LLC v. Superior Court*, No. B221636, 2010 WL 4119245 (Cal. App. Oct. 21, 2010), a statutory anti-waiver provision does not make choice-of-law provisions "illegal." Nor do the *Alaska Packers* decisions[1] or their progeny so hold. Those cases simply stand for the proposition that parties who *enter into employment contracts in California* may be bound by California law when they have substantial contacts with California. They have no bearing on this case, which involves a plaintiff who does not allege that he has *any* contacts with California (apart from the fact that his team played two games here after he retired), much less that he entered into his employment contract here.

Second, Matthews cannot meet the equally stringent requirements for establishing manifest disregard of the law. Arbitrator Sharpe did not misinterpret the law, but even if he had, that would not suffice to show manifest disregard, which requires that the arbitrator acknowledge, then disregard, a clear law or policy countermanding his decision. *E.g.*, *Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 879 (9th Cir. 2007) (A court "may not reverse an arbitration award even in the face of an erroneous interpretation of the law," unless "the arbitrator 'understood and correctly stated the law, but proceeded to disregard the same.'") (citations omitted).

---

[1] *Alaska Packers Ass'n v. Indus. Accident Comm'n of Cal.*, 1 Cal. 2d 250, 252 (1934); *Alaska Packers Ass'n v. Indus. Accident Comm'n of Cal.*, 294 U.S. 532, 539 (1935).

Third, Matthews' argument that the award violates federal labor law is a non-starter.  Matthews is correct that unions and employers are generally precluded from bargaining for terms that violate minimum state labor standards.  But the terms of Matthews' contract do not violate any California labor standards.  As explained in Defendants' Motion to Confirm and discussed in this brief, California law does not prohibit non-residents who enter into employment agreements out-of-state from electing to resolve their workers' compensation disputes under another state's law.  To the contrary, California has a strong policy in favor of honoring choice-of-law provisions and requires its courts to enforce them where, as here, the chosen state's interest in the litigation is materially greater than that of California.

Finally, Matthews' argument that the award violates the Full Faith and Credit Clause is based on a faulty premise.  The Full Faith and Credit Clause does not, as Matthews claims, "allow[] California to ignore contrary laws from other states[.]"  (Amended Motion to Vacate Arbitration Award ("Motion to Vacate"), p. 12.)  Far from allowing state courts to *ignore* the law of other states, the Full Faith and Credit Clause requires them to *defer* to the laws of other states in appropriate circumstances. As set forth in Defendants' Motion to Confirm, it is Matthews' own position that violates the Full Faith and Credit Clause by insisting that the California Labor Code usurps all other states' laws even when (as here) the plaintiff lacks any significant contacts with California.

## II.    ARGUMENT

### A.  California Law Does Not Preclude A Non-Resident Employee Who Enters Into A Contract In Tennessee From Agreeing To Apply Tennessee Law To His Workers' Compensation Disputes.

Matthews' Motion to Vacate rests on the mistaken premise that California law precludes parties who reside and contract outside of California from agreeing to resolve their workers' compensation disputes under the laws of a different state.  In fact, California law says no such thing.

As explained in Defendants' Motion to Confirm, while California's workers' compensation statute prohibits contracts that "exempt the employer from liability" or "waive" benefits, Cal. Lab. Code §§ 5000, 2804, it nowhere outlaws choice-of-law provisions calling for the application of another

state's law.[2]  (Motion to Confirm, pp. 8-9.)  "Had the Legislature so intended, it easily could have said so.  It did not." *All One God Faith, Inc. v. Organic & Sustainable Indus. Standards, Inc*., 183 Cal. App. 4th 1186, 1213 (2010).

After Defendants filed their Motion to Confirm, the California Court of Appeal issued a decision, *1-800-Got Junk? v. Superior Court*, confirming that a statutory anti-waiver provision does not, by itself, proscribe parties from agreeing to resolve their disputes under the law of another state. In *Got Junk*, a franchisor argued that the California Franchise Relations Act's ("CFRA") anti-waiver provision automatically voided its agreement to apply Washington law to all franchise disputes.  The appellate court disagreed, holding that section 20010 of the CFRA, which – similar to California Labor Code section 5000 – states that "'[a]ny condition, stipulation or provision purporting to bind any person to waive compliance with any provision of this law is contrary to public policy and void,'" "*does not categorically prohibit choice of law provisions*."  2010 WL 4119245, at *9-10 (quoting CFRA section 20010) (emphasis added).  The *Got Junk* court elaborated:

> [H]ad the Legislature intended the restriction in section 20010 to have the absolute effect suggested by Got Junk, it could have so specified.  By way of comparison, the CFRA, at section 20040.5, categorically prohibits *forum selection clauses* in franchise agreements . . . . The Legislature could have written section 20010 to categorically prohibit *choice of law provisions* in franchisee agreements.

*Id.* at *10 (original emphasis).[3]  So too here, had the Legislature intended the workers' compensation statute's "anti-waiver" provision to "categorically prohibit" choice-of-law provisions, it would have

---

[2] California Labor Code section 2804 states: "Any contract or agreement, express or implied, made by any employee to waive the benefits of this article or any part thereof, is null and void . . . ."

[3] Underscoring California's "'*strong policy favoring enforcement of [choice-of-law provisions]*,'" the *Got Junk* court held that it would invalidate the parties' agreement to apply Washington law only if its application was contrary to fundamental California policy *and* if California had a materially greater interest in the litigation.  2010 WL 4119245, at *6 (quoting *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 464-65 (1992)); *see generally* Motion to Confirm, pp. 10-14 (discussing California's policy favoring enforcement of choice-of-law provisions and the limited exceptions set forth in *Nedlloyd*).  Because the Court of Appeal determined that California public policy was "not offended" by the application of Washington franchise law, it upheld the parties' choice-of-law agreement without deciding whether California had a greater interest than Washington in the litigation.  *Got Junk*, 2010 WL 4119245, at *10.

1   said so have explicitly.  Because it did not, Matthews' reliance on sections 5000 and 2804 is

2   unavailing.

3          In the absence of any statutory support for his argument, Matthews is left to hang his hat on the

4   California Supreme Court's decision in *Alaska Packers*, a case involving a Mexican resident who

5   entered an employment contract in California.  Pursuant to the contract, the employee agreed to travel

6   to Alaska to can salmon for the season, and then travel back to California to be paid.  1 Cal. 2d at 252.

7   The California Supreme Court was asked to decide whether, under those circumstances, the parties'

8   agreement to apply Alaska law to their workers' compensation dispute was valid.  The Court decided

9   that it was not because the contract was entered in California and "*the laws of this state enter into and*

10  *are part of every contract made here*."  *Id.* at 260 (emphasis added).  Accordingly, the "attempted

11  selection of the Alaska act as the governing law . . . is not available to [the employer].  A contract

12  attempting to avoid the liability imposed by the California act is invalid."  *Id.* (citing California Labor

13  Code section 5000's predecessor statute, Workmen's Compensation Act section 27(a)).

14         The California Supreme Court emphasized that a rule requiring the parties to apply the

15  workers' compensation law of the state where the contract was entered was especially critical in

16  "contracts as the present one, which hire itinerant labor in large groups to be transported out of the

17  state for seasonal work and returned to this state at the end of the season."  *Alaska Packers*, 1 Cal. 2d at

18  261.  In that "special class of employment contracts," "the state of hiring has an interest at least as

19  substantial as that of the state in which the temporary and seasonal work is to be performed" because

20  once the employer returns an injured worker to California, the worker has no means of returning to

21  Alaska to claim compensation and is likely to become a "charge upon" California.  *Id.* at 261-62.

22         The U.S. Supreme Court affirmed the California Supreme Court's decision, holding that

23  because there were significant California contacts – "*the contract of employment was entered into*

24  *within the state [of California]* – the stipulation that the Alaska act should govern was invalid under

25  section 27(a)."  *Alaska Packers*, 294 U.S. at 539 (emphasis added); *id.* at 540 (holding that California

26  law "assumes only to provide a remedy to be granted by the California Commission for injuries,

27  received in the course of employment *entered into within the state*, wherever they may occur")

28

1  (emphasis added).  Like the California Supreme Court, the U.S. Supreme Court highlighted the

2  "special circumstances" of the case, which gave California a heightened "interest in controlling and

3  regulating this employer-employee relationship" because "[t]he probability is slight that injured

4  workmen, once returned to California, would be able to retrace their steps to Alaska, and there

5  successfully prosecute their claims for compensation." *Id.* at 542.  The U.S. Supreme Court added that

6  it was "unnecessary to consider what effect should be given to the California statute" under

7  circumstances giving California a "lesser interest" in the case. *Id.* at 543.

8        The *Alaska Packers* decisions thus are fact-specific and in no way restrict parties residing

9  outside of California and entering into an employment contract outside of California from agreeing to

10  apply the workers' compensation law of another state to their disputes.  In pointing to two sentences

11  from the California Supreme Court's opinion stating that the "attempted selection" of another state's

12  workers' compensation law is "invalid" under section 27(a) (Motion to Vacate, pp. 6-7 (quoting *Alaska*

13  *Packers*, 1 Cal. 2d at 260)), Matthews ignores the "special" facts of the case, 1 Cal. 2d at 261, and the

14  opinion's preceding sentence, which conditions its holding regarding section 27(a) on the fact that the

15  contract was entered in California, *id.* at 260 (explaining that "the laws of this state enter into and are a

16  part of every contract made here," and that parties entering into an employment relationship in

17  California "submit themselves to its laws").[4]  Matthews' expansive reading also is inconsistent with the

18  U.S. Supreme Court's opinion, which specifically holds that section 27(a) was violated *only* because

19  "the contract of employment was entered into within the state." *Alaska Packers*, 294 U.S. at 539.

20        In the seventy-five plus years since *Alaska Packers* was decided, *no* court has embraced

21  Matthews' far-reaching theory that California law precludes non-resident parties negotiating and

22  entering into a contract outside of California from agreeing to apply the workers' compensation law of

23  ――――――――――――――――――――

24  [4] Matthews' interpretation violates the well-established rule that "[t]he holding of a decision is
limited by the facts of the case being decided, notwithstanding the use of overly broad language by the

25  court in stating the issue before it or its holding or in its reasoning." *People v. Jennings*, 50 Cal. 4th
616, 684 (2010); *Sec. Pac. Nat'l Bank v. Wozab*, 51 Cal. 3d 991, 1003-04 (1990) ("It is the general rule

26  that the language of an opinion must be construed with reference to the facts presented by the case, and
the positive authority of a decision is coextensive only with such facts.") (internal quotations and

27  citations omitted); *Priceline.com Inc. v. City of Anaheim*, 180 Cal. App. 4th 1130, 1038-41 (2010)
(rejecting plaintiffs' "casual citation" to the "sweeping rhetoric" of a California Supreme Court opinion

28  and "declin[ing] to extend [its] reach beyond the two limitations of its holding implied by its facts").

the state where the contract was negotiated and entered.  To the contrary, courts following the *Alaska Packers* cases have recognized that their reach is limited to employees with substantial California contacts.  As the California Court of Appeal described in *Bowen v. Workers' Comp. Appeals Bd.*, 73 Cal. App. 4th 15 (1999), a case on which Matthews relies:  "[T]he California Supreme Court held that *an employee hired in California* to work in Alaska, where he was injured, came within the jurisdiction of California workers' compensation law despite a contract clause providing that Alaska's Workers' Compensation Act would apply."  *Id.* at 26 (emphasis added).  *Bowen* involved a professional baseball player who resided in and signed his employment contract in California, and the appellate court held that the player – who had *not* agreed to a choice-of-law provision – was entitled to California workers' compensation benefits for out-of-state injuries.  California, the court explained, has a "'legitimate public interest'" in protecting "*California employees* injured outside of California," *id.* (quoting *Alaska Packers*, 294 U.S. at 542) (emphasis added), and an employer cannot "deny an employee . . . California workers' compensation benefits *where the employee accepts an offer of employment in California*," *id.* (emphasis added); *see also Benguet Consol. Min. Co. v. Indus. Accident Comm'n*, 36 Cal. App. 2d 158, 164 (1940) ("Both [*Alaska Packers*] courts held that, *because the contract of hire was entered into in this state*, the benefits of the California act were extended to such nonresident alien.") (emphasis added).[5]

Matthews also relies on a 1953 Attorney General opinion and a Workers' Compensation Appeals Board opinion that was subsequently vacated (Motion to Vacate, pp. 7-8) to support his theory

---

[5] The two other cases that Matthews cites for the proposition that California law invalidates out-of-state choice-of-law agreements are inapposite.  *Hines v. Industrial Accident Commission*, 182 Cal. 359 (1920) (cited in Motion to Vacate, p. 7), which pre-dates *Alaska Packers*, simply held that section 27(a) prohibited an employer who discovered his employee's "predisposition to hernia" from requiring that the employee release him from all hernia-related claims.  *Id.* at 359.  Because there is no indication that *Hines* involved out-of-state residents, an out-of-state contract, or any choice-of-law provision, the decision is of no import here.  *United Paperworkers International Union v. Allied Paper, Inc.*, No. F 86-425, 1987 WL 33822 (N.D. Ind. May 29, 1987), *amended by* 1987 WL 33823 (N.D. Ind. Sept. 23, 1987) (cited in Motion to Vacate, p. 12), is equally irrelevant.  In that case, the district court vacated as illegal an arbitration award that conditioned an employee's reinstatement on her agreement to release her employer of "all liability for injuries she may suffer" on the job, in clear violation of Indiana law.  *Id.* at *1-2.  Unlike in this case, the parties in *United Paperworkers* did not dispute that the arbitration award violated the Indiana statute – the only issue was whether a challenge to the award was barred by the applicable statute of limitations.  *Id.* at *2.

that section 5000 precludes reliance on foreign choice-of-law provisions, but neither authority is binding on this Court.  *E.g.*, *Wenke v. Hitchcock*, 6 Cal. 3d 746, 751-52 (1972) (California attorney general opinions are not "controlling authority"); *County of San Luis Obispo v. Workers' Comp. Appeals Bd.*, 133 Cal. App. 4th 641, 649 n.2 (2005) (WCAB decisions "lack[] precedential value"). Moreover, the Attorney General opinion has no persuasive value because it nowhere addresses choice-of-law provisions or out-of-state contracts, maintaining only that "an attempted waiver of workmen's compensation benefits" is "against public policy" and "specifically prohibited by statute," 22 Ops. Cal. Atty. Gen. 205 (1953).  *See State Water Res. Control Bd. Cases*, 136 Cal. App. 4th 674, 758 (2006) (holding that an Attorney General opinion was not "persuasive authority" for a proposed statutory construction "because nowhere in the opinion did the Attorney General address that issue").

Ultimately, Matthews is left with a workers' compensation statute that does not categorically bar choice-of-law provisions, and with case law that restricts choice-of-law provisions in the workers' compensation context when the contract is entered into in California.  California law thus poses no obstacle to Arbitrator Sharpe's decision to enforce an agreement entered in Tennessee between the Tennessee Titans and one of its players to apply Tennessee workers' compensation law.

**B. Because There Is No Explicit Conflict Between California Law And The Arbitration Award, The Award Should Be Confirmed.**

1. Arbitrator Sharpe's award does not violate "explicit, well defined and dominant" public policy.

Without any rule prohibiting parties outside of California from agreeing to abide by the workers' compensation laws of a different state, Matthews cannot possibly establish that the award should be vacated for violating California public policy.  As explained in Defendants' Motion to Confirm (p. 7), the "narrow" public policy exception applies only when there is "'an explicit, well defined and dominant public policy . . . that specifically militates against the relief ordered by the arbitrator.'"  *United Food & Commercial Workers Int'l Union, Local 588 v. Foster Poultry Farms*, 74 F.3d 169, 174 (9th Cir. 1995) (quoting *Ariz. Elec. Power Coop., Inc. v. Berkeley*, 59 F.3d 988, 992 (9th Cir. 1995)).  Such policy, the Supreme Court has made clear, must emanate from "laws and legal precedents and not from general considerations of supposed public interests."  *United Paperworkers*

1   *Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 43 (1987).  Because Matthews can point to no

2   statute or binding decision that outlaws foreign choice-of-law provisions in contracts between non-

3   residents negotiated and entered into outside of California, the award must be confirmed.

4        The cases on which Matthews relies are of no help to him because in those cases, the awards

5   *did* "create[] an[] explicit conflict [] with other laws and legal precedents."  *Misco*, 484 U.S. at 43.  In

6   *American Postal Workers Union AFL-CIO v. U.S. Postal Service*, 682 F.2d 1280 (9th Cir. 1982) (cited

7   in Motion to Vacate, p. 4), for example, an arbitration award requiring the reinstatement of a Postal

8   Service employee who indisputably had participated in a strike against his government employer

9   violated a federal statute explicitly prohibiting someone who "'participates in a strike . . . against the

10   Government'" from "'hold[ing] a position in the Government.'"  *Id.* at 1283 (quoting 15 U.S.C. §

11   7311).

12        Similarly, in *National Football League Players Association v. Pro-Football, Inc.*, 857 F. Supp.

13   71 (D.D.C. 1994) (cited in Motion to Vacate, p. 4), an arbitration decision ordering the Washington

14   Redskins to suspend player-employees who had failed to pay their union dues conflicted with a

15   Virginia statute specifically stating that "[n]o employer shall require any person, as a condition of

16   employment or continuation of employment, to pay any dues . . . to any labor union," Va. Code Ann.

17   §40.1-62.  *Id.* at 80.

18        Unlike the statutes at issue in *National Football League Players Association* and *American*

19   *Postal Workers*, California Labor Code sections 5000 and 2804 do *not* explicitly prohibit the choice-of-

20   law provision upheld by Arbitrator Sharpe.  Moreover, there are no binding legal precedents that

21   invalidate Arbitrator Sharpe's decision, unlike in the other cases on which Matthews relies (Motion to

22   Vacate, p. 4 (citing *Cal. Pac. Med. Center v. Serv. Employees Int'l Union*, No. C 06 4685 SC, 2007 WL

23   81906, at *7 (N.D. Cal. Jan. 9, 2007) (vacating award because it conflicted with an NLRB decision,

24   which "overrides" the arbitrator's decision under well-established Ninth Circuit precedent); *New York*

25   *Tel. Co. v. Commc'n Workers of Am. Local 1100*, 256 F.3d 89, 92 (2d Cir. 2001) (vacating award

26   because it conflicted with a Second Circuit decision directly on point)).

27

28

1    Arbitrator Sharpe's award, in sum, violates no "explicit, well defined, and dominant" public

2 policy, *Foster Poultry Farms*, 74 F.3d at 174, and thus cannot fall within the "extremely narrow"

3 public policy exception, *United Transp. Union v. United Pacific R.R. Co*., 116 F.3d 430, 433 (9th Cir.

4 1997), that courts in this Circuit are "reluctant" to apply, *Ariz. Elec. Power*, 59 F.3d at 992.

5    2.   Arbitrator Sharpe's award does not ignore "well defined, explicit, and clearly applicable" law.

6    Matthews further argues that Arbitrator Sharpe's "'manifest disregard of the law' warrants

7 vacatur." (Motion to Vacate, p. 5.)  As a threshold matter, the manifest disregard exception "is

8 shorthand for a statutory ground under the FAA, specifically 9 U.S.C. § 10(a)(4) [providing that an

9 award may be vacated 'where the arbitrators exceeded their powers']."  *Comedy Club, Inc. v. Improv*

10 *West Assocs.*, 553 F.3d 1277, 1290 (9th Cir. 2009).  This action, however, arises under the LMRA, and

11 while the FAA is "often used as a source of principles to guide formulation of a federal common law of

12 labor arbitration under § 301," "most courts . . . adhere to the traditional view that suits arising under

13 Section 301 and concerning collective bargaining agreements are outside the scope of the FAA."  *New*

14 *United Motor Mfg. Inc. v. United Auto Workers Local 2244*, 617 F. Supp. 2d 948, 954 n.6 (N.D. Cal.

15 2008) (internal quotations and citations omitted).[6]

16    In any event, this Court need not resolve this question because even if the FAA did apply, it

17 would not provide a ground for vacating the award.  Even assuming that the arbitrator got the law

18 wrong (he did not), his ruling was not in "manifest disregard" of the law.  Like the public policy

19 exception, the manifest disregard exception is "narrow" and "requires 'something beyond and different

20 ─────────────────

21    [6] The two Supreme Court decisions that Matthews cites provide no support for his position that

22 the "standards for vacatur under the FAA and the LMRA are the same."  (Motion to Vacate, p. 5 n.1 (citing *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 130 S. Ct. 2847, 2857 n.6 (2010) (noting that

23 "precedents applying the FAA . . . employ the same rules of arbitrability that govern labor cases" – not that the FAA and the LMRA employ the same vacatur standards); *Misco*, 484 U.S. at 41 n.9 (holding

24 that while federal courts "have often looked to the [FAA] for guidance in labor arbitration cases," LMRA cases are governed by "rules of federal common law," not by the statutory grounds that control

25 FAA cases)).)  Matthews' other authorities (Motion to Vacate, p. 5) are equally unavailing.  *Comedy Club* arises under the FAA, not the LMRA, 553 F.3d at 1281, and *American Postal Workers*, though an

26 LMRA case, assumes without deciding that the "manifest disregard" standard applies in the context of collective bargaining agreements, 682 F.2d at 1284-85; *see generally Gonzales v. Dep't of Homeland*

27 *Sec.*, 508 F.3d 1227, 1235 (9th Cir. 2007) ("We have held that issues that are not raised or discussed are 'unstated assumptions on non-litigated issues [and] are not precedential holdings binding further

28 decisions.'") (quoting *Sakamoto v. Duty Free Shoppers, Ltd*., 764 F.2d 1285, 1288 (9th Cir. 1985)).

from a mere error in the law or failure on the part of the arbitrators to understand and apply the law.'" *Collins*, 505 F.3d at 879 (quoting *San Martine Compania De Navegacion, S.A. v. Saguenay Terminals Ltd.*, 293 F.2d 796, 801 (9th Cir. 1961)).  Under the manifest disregard exception, a court "may not reverse an arbitration award even in the face of an erroneous interpretation of the law," unless "the arbitrator 'understood and correctly stated the law, but proceeded to disregard the same.'" *Id.* (quoting *San Martine,* 293 F.2d at 801); *see also Bear, Stearns & Co. v. Buehler*, 432 F. Supp. 2d 1024, 1026 (C.D. Cal. 2000) (holding that "manifest disregard" is "a very stringent standard" and "[c]onfirmation is required even in the face of erroneous misinterpretation of the law") (internal quotations and citations omitted).

        "To rise to the level of manifest disregard *'the governing law alleged to have been ignored by the arbitrator[] must be well defined, explicit, and clearly applicable*.'"  *Collins*, 505 F.3d at 879 (quoting *Carter v. Health Net of Cal., Inc.*, 374 F.3d 830, 838 (9th Cir. 2004)) (emphasis added).  "An award will not be set aside because of an arguable difference regarding the meaning or applicability of the law.  The error made by the arbitrator[] must have been obvious and capable of being perceived readily and instantly."  *Bear, Stearns*, 432 F. Supp. 2d at 1026 (internal quotations and citations omitted).  In *Collins*, therefore, the Ninth Circuit rejected a manifest disregard challenge because "the governing law alleged to have been ignored was not well defined, explicit, and clearly applicable." 505 F.3d at 884.  Affirming the district court's decision to confirm the award, the appellate court explained that "the arbitrators could not manifestly disregard the law because no binding precedent existed" as to the issues they addressed.  *Id.*

        Here, as in *Collins*, the manifest disregard exception is inapplicable because there is no "binding precedent" precluding non-resident parties who negotiate and enter into a contract outside of California from agreeing to apply the workers' compensation laws of a different state.  It also is not "obvious" and "readily and instantly" perceptible, *Bear, Stearns*, 432 F. Supp. 2d at 1026, that Labor Code section 5000's prohibition against contracts that "exempt the employer from [workers' compensation] liability" bars an employee from agreeing to be bound by the workers' compensation law of the state in which his contract was executed, Cal. Lab. Code § 5000.

OPPOSITION TO MATTHEWS' AMENDED MOTION TO VACATE ARBITRATION AWARD          10cv1671

1    "The cases that have found a manifest disregard of the law," by contrast, like cases in which the

2    public policy exception has applied, "involve arbitration awards that contravene a controlling statute or

3    case law that is directly on point." *Veliz v. Cintas Corp.*, No. C 03-1180, 2009 WL 1766691, at *10

4    (N.D. Cal. June 22, 2009).  In *Comedy Club*, for example, a case on which Matthews relies, the Ninth

5    Circuit ordered the district court to vacate an arbitration award upholding a broad covenant not to

6    compete because it was "contrary to California Business & Professions Code § 16600 and 'well-

7    established California law.'"  *Veliz*, 2009 WL 1766691, at *10 (quoting *Comedy Club*, 553 F.3d at

8    1293).  As the *Comedy Club* court held:  "Even under the permissive standard with which we view

9    arbitral decisions," the award cannot "be countenanced in light of the clear prohibition of § 16600" and

10   its direct conflict with decisions of the California Court of Appeal.  *Comedy Club*, 553 F.3d at 1293;

11   *see id.* at 1293 n.17 ("[I]t was not in the province of the arbitrator to make a 'ruling' about § 16600 that

12   was so at odds with what the California Court of Appeal stated . . . .").  Like in *Comedy Club*, the other

13   cases cited by Matthews involved governing laws that were "well defined, explicit, and clearly

14   applicable," *Collins*, 505 F.3d at 879.  (Motion to Vacate, p. 5 (citing *Gas Aggregation Servs., Inc. v.

15   Howard Avista Energy, LLC,* 319 F.3d 1060, 1068-69 (8th Cir. 2003) (vacating an arbitral decision that

16   awarded attorneys' fees despite a clearly applicable Minnesota Supreme Court decision specifically

17   prohibiting attorneys' fees claims under the Minnesota Consumer Fraud Act); *New York Tel.*, 256 F.3d

18   at 92 (vacating an award that recognized but "explicitly rejected" controlling Second Circuit precedent,

19   "relying instead" on two out-of-Circuit opinions)).)  Here, as explained above, there is no "explicit"

20   statutory prohibition against choice-of-law provisions in the workers' compensation context, or

21   "clearly applicable" precedent that conflicts with Arbitrator Sharpe's award.  *Collins*, 505 F.3d at 879.

22         Moreover, it cannot be said that Arbitrator Sharpe "'understood and correctly stated the law, but

23   proceeded to disregard the same.'"  *Collins*, 505 F.3d 879 (quoting *San Martine*, 293 F.2d at 801).

24   Arbitrator Sharpe thoroughly considered Matthews' section 5000 argument – which was fully briefed

25   below – and decided that section 5000 did not obstruct enforcement of an agreement negotiated and

26   entered into in Tennessee between the Tennessee Titans and one of its players to apply Tennessee

27   workers' compensation law.  (Complaint, Exh. A, pp. 9-10, 14-15.)  Even if Arbitrator Sharpe

28

misinterpreted section 5000 and the *Alaska Packers* decisions (he did not), there is no indication – and Matthews points to none – that he "'understood and correctly stated the law, but proceeded to disregard the same.'"  *Collins*, 505 F.3d at 879 (quoting *San Martine*, 293 F.2d at 801).

The Ninth Circuit's decision in *Luong v. Circuit City Stores, Inc*., 368 F.3d 1109 (9th Cir. 2004), illustrates the point.  There, the plaintiff argued that the arbitrator "disregarded" the U.S. Supreme Court's ruling in *Toyota Motor Mfg., Inc. v. Williams*, 534 U.S. 184 (2002).  *Id.* at 1112.  Emphasizing that the manifest disregard exception applies only when it is "'clear from the record that the arbitrator[] recognized the applicable law and then ignored it,'" *Luong*, 368 F.2d at 1112 (quoting *Mich. Mut. Ins. Co. v. Unigard Sec. Ins. Co*., 44 F.3d 826, 832 (9th Cir. 1995)), the Ninth Circuit held – "without expressing a view one way or the other on whether the arbitrator got *Toyota* right" – that "it is clear that the arbitrator did not ignore it. . . . Virtually every line of the opinion and award discusses *Toyota* and how it plays out on the facts in Luong's case.  That cannot amount to 'manifest disregard of federal law.'"  *Id.*[7]  Here, as in *Luong*, in the absence of any evidence that Arbitrator Sharpe "recognized the applicable law and then ignored it," his award should be confirmed.

### C.  Federal Labor Law Poses No Obstacle To The Arbitration Award.

Matthews next contends that the award is "contrary to federal labor law" that prevents unions and employers from bargaining for terms that violate "'minimum state labor standards.'"  (Motion to Vacate, pp. 9-10 (quoting *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 755 (1985)); *see also Contract Servs. Network, Inc. v. Aubry*, 62 F.3d 294, 298-99 (9th Cir. 1995) (holding that "minimum labor standards . . . . cannot be undercut by collective bargaining").)  The problem with Matthews' argument lies in the starting assumption that Arbitrator Sharpe's award upholding the parties' choice-of-law agreement "forces Matthews to waive his unwaivable right to seek benefits in California."  (Motion to Vacate, p. 12.)  As explained above, California law does not categorically

---

[7] In *New York Telephone Co*., by contrast, it *was* "clear from the record that the arbitrator[] recognized the applicable law and then ignored it," *Luong*, 368 F.2d at 1112.  The arbitrator in that case "expressly disregarded" a Second Circuit decision, *International Longshoremen's Association v. Seatrain Lines, Inc*., 326 F.2d 916 (2d Cir. 1964), that was virtually indistinguishable from the case before it.  *N.Y. Tel.*, 256 F.3d at 91-92.  Flouting that controlling authority, the arbitrator stated: "'*Seatrain* was decided 34 years ago. . . . Perhaps it is time for a new court decision.'"  *Id.* at 91 (quoting arbitral decision).

1   restrict non-residents entering into out-of-state agreements from applying the workers' compensation

2   law of a state other than California.  To the contrary, as discussed in Defendants' Motion to Confirm,

3   California law *mandates* enforcement of the parties' choice-of-law agreement where, as here, the

4   chosen state's interest in the litigation is materially greater than that of California.  (Motion to Confirm,

5   pp. 11-14.)  Federal preemption law, as a result, is of no assistance to Matthews.

6          **D.  Matthews' Full Faith And Credit Arguments Are Unavailing.**

7          Matthews argues that the Full Faith and Credit Clause "allows California to ignore contrary

8   laws from other states, and prohibits other states from trying to foist its laws upon California, as the

9   Award does here."  (Motion to Vacate, p. 12.)  This argument entirely misapprehends the nature of the

10  Full Faith and Credit Clause, which, far from allowing state courts to *ignore* the law of other states,

11  requires them to *defer* to the laws of other states in appropriate circumstances.  *Alaska Packers*, 294

12  U.S. at 543 ("[T]he full faith and credit clause imposes on the courts of one state the duty so to enforce

13  the laws of another.").  Furthermore, Tennessee is not "foisting" its law upon California:  "The mere

14  recognition by the courts of one State that parties by their conduct have subjected themselves to certain

15  obligations arising under the law of another State is not to be deemed an extra-territorial application of

16  the law of the State creating the obligation."  *Pac. Employers Ins. Co. v. Indus. Accident Comm'n,* 10

17  Cal. 2d 567, 573 (1938), *aff'd*, 306 U.S. 493 (1939).  The Award here thus cannot possibly be viewed

18  as a violation of the Full Faith and Credit Clause.  Indeed, as set forth in Defendants' Motion to

19  Confirm, it is Matthews' own position that violates the Full Faith and Credit Clause (and the Due

20  Process Clause) of the U.S. Constitution by construing sections of the California Labor Code as

21  mandating the application of California law even in cases like this one where the plaintiff lacks

22  significant contacts with California.  (Motion to Confirm, pp. 15-18.)

23         What Matthews seems to argue is that the Full Faith and Credit Clause does not require the

24  California courts to apply Tennessee workers' compensation laws in this case.  But the arbitrator did

25  not rely on the Full Faith and Credit Clause to decide that Tennessee law applies here; he relied on the

26  parties' negotiated (and entirely lawful) choice-of-law provision calling for the application of

27  Tennessee law to workers' compensation disputes.  Nothing about that decision is contrary to the

28

principle of Full Faith and Credit or to the Supreme Court cases on which Matthews relies.  As discussed above and in Defendants' Motion to Confirm, both of the cases Matthews cites – *Alaska Packers*, 294 U.S. 532, and *Pacific Employers*, 306 U.S. 493 – are factually distinguishable from this case, and neither stands for the propositions Matthews ascribes to them.  (Motion to Confirm, pp. 18-20.)

*Alaska Packers* did *not* hold that "California, as a sovereign government, is free to apply its own workers' compensation law, even if the employee and employer agreed otherwise."  (Motion to Vacate, p. 13.)  The Court rather held that, under "the special circumstances" of that case, 294 U.S. at 542, the California court did not violate the Full Faith and Credit Clause in applying its own law to a worker whose contract included a choice-of-law provision calling for the application of Alaska law, *id*. at 549-50.  As discussed above and in Defendants' Motion to Confirm, the injured worker was a Mexican citizen who entered into a contract in California that provided for him to work in Alaska, then return to California to be paid.  *Id*. at 538.  The Supreme Court considered the fact that the worker was injured in Alaska, and that his contract called for the application of Alaska's workers' compensation law, but decided that the California court was free to apply its own law because California had a substantially stronger interest in the case than Alaska.  *Id*. at 543.  As the Court observed, the injured worker, who had returned to California, would have a hard time obtaining an Alaska remedy and was thus liable to become a ward of the state of California.  *Id*. at 541.  The Court emphasized that its holding was limited to the peculiar facts of the case before it, and stated that it did not decide what the outcome would be if the parties were domiciled in Alaska or had fewer contacts with California.  *Id*. at 543 ("It is unnecessary to consider what effect should be given to the California statute if the parties were domiciled in Alaska or were their relationship to California such as to give it a lesser interest in protecting the employee by securing for him an adequate and readily available remedy.").

Similarly, in *Pacific Employers*, the Supreme Court carved out an exception to the Full Faith and Credit Clause where the forum state (California) had strong ties to the litigation.  Although the worker seeking benefits was a Massachusetts resident who regularly worked in Massachusetts, he was injured while working in California and treated for his injuries here.  The Court stressed that it would

be "obnoxious" to California's workers' compensation policy "'to deny persons who have been injured in this state the right to apply for compensation *when to do so might require physicians and hospitals to go to another state to collect charges for medical care and treatment given to such persons*.'"  306 U.S. at 504 (quoting *Pacific Employers*, 10 Cal. 2d at 578) (emphasis added).  The Court by no means established a general rule that the forum state may always apply its own laws, as Matthews suggests.

In sum, neither *Alaska Packers* nor *Pacific Employers* supports Matthews' position.  Unlike the workers in those cases, Matthews alleges *no* personal contacts with California.  Indeed, Matthews does not even allege that he played in California: he asserts only that his team played two games here after he himself retired.  This does not suffice to establish the significant contacts required for California law to apply, much less to override the parties' choice-of-law agreement.  (Motion to Confirm, pp. 15-18 (citing, *inter alia*, *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985); *Allstate Ins. Co. v. Hague*, 449 U.S. 302 (1981)).)

Finally, Matthews cites *State of Ohio v. Chattanooga Boiler & Tank Co.*, 289 U.S. 439 (1933) and *True v. Amerail Corp.*, 584 S.W.2d 794 (Tenn. 1979), for the undisputed proposition that "Tennessee law permits Tennessee employees to file workers' compensation claims in other states." (Motion to Vacate, p. 13.)  Defendants do not contend – and the arbitrator did not decide – otherwise.  Rather, the arbitrator agreed with Defendants that Matthews must abide by his agreement to litigate his workers' compensation claims under Tennessee workers' compensation law.[8]  Matthews does not dispute – because he cannot – that choice-of-law provisions like the one he signed are enforceable under Tennessee law.  *E.g.*, *Vantage Tech., LLC v. Cross*, 17 S.W.3d 637, 650-51 (Tenn. Ct. App. 1999); *Goodwin Bros. Leasing, Inc. v. H&B Inc.*, 597 S.W.2d 303, 306-07 (Tenn. 1980).  In short, the arbitrator's decision does not violate the laws of Tennessee any more than it violates federal or California law, or the Full Faith and Credit Clause of the U.S. Constitution.

---

[8]  Neither of the cases Matthews cites concerned a choice-of-law or conflicts issues. Both cases involved plaintiffs who filed for workers' compensation benefits and received awards outside of Tennessee, under the laws of states indisputably having contacts with the litigation.  The Tennessee Supreme Court in *True* determined that the worker was thereafter estopped from seeking or receiving benefits under the Tennessee statute.  584 S.W.2d at 795.  The Supreme Court in *Chattanooga Boiler* held that the Full Faith and Credit Clause did not prevent the state of Ohio, which paid benefits to the worker's decedent, from suing to collect the award from the employer.  289 U.S. at 443.

OPPOSITION TO MATTHEWS' AMENDED MOTION TO VACATE ARBITRATION AWARD          10cv1671

## CONCLUSION

For the foregoing reasons and for the reasons stated in the Motion to Confirm, the award should be confirmed.

Respectfully submitted,


Dated:  November 12, 2010                    AKIN GUMP STRAUSS HAUER & FELD LLP
                                             Daniel L. Nash
                                             Rex S. Heinke
                                             L. Rachel Helyar
                                             Johanna R. Shargel


                                             By _____ s/ Rex S. Heinke _____
                                             Attorneys for Defendants/Respondents
                                             National Football League Management Council
                                             and Tennessee Titans
                                             E-mail:  rheinke@akingump.com

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

    I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is:  2029 Century Park East, Suite 2400, Los Angeles, California 90067.  On November 12, 2010, I served the following document described as: **DEFENDANTS' OPPOSITION TO MATTHEWS' AMENDED MOTION TO VACATE ARBITRATION AWARD** on the interested parties below, using the following means:

    The following participants in the case are identified in the Notice of Electronic Filing as registered CM/ECF users and were served by the CM/ECF system:

> Matthew M. Walsh
> Maya C. Dharwarkar
> DEWEY & LeBOEUF LLP
> 333 South Grand Avenue, Suite 2600
> Los Angeles, CA  90071-1530
> Telephone:   213.621.6000
> Facsimile:   213.621.6100
> E-mail:       mwalsh@dl.com
> E-mail:       mdharwarkar@dl.com

> *[Attorneys for Plaintiffs/Petitioners]*

    I further certify that some of the participants in the case are not registered CM/ECF users. The foregoing document was also e-mailed and sent via United States mail.  I enclosed the documents in a sealed envelope addressed to the respective address of the parties stated below and placed the envelope for collection and mailing, following our ordinary business practices.  I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid at Los Angeles, California.

> Jeffrey L. Kessler
> Adam J. Kaiser
> Jeffrey H. Newhouse
> DEWEY & LeBOEUF LLP
> 1301 Avenue of the Americas
> New York, NY  10019-6092
> Telephone:   212.259.8000
> Facsimile:   212.259.6333
> E-mail:       jkessler@dl.com
> E-mail:       akaiser@dl.com
> E-mail:       jnewhouse@dl.com

> *[Attorneys for Plaintiffs/Petitioners]*

    Executed on November 12, 2010, at Los Angeles, California.

      _s/ Serena L. Steiner_____