REX S. HEINKE (SBN 066163)
rheinke@akingump.com
L. RACHEL HELYAR (SBN 193080)
rhelyar@akingump.com
JOHANNA R. SHARGEL (SBN 214302)
jshargel@akingump.com
**AKIN GUMP STRAUSS HAUER & FELD LLP**
2029 Century Park East, Suite 2400
Los Angeles, California 90067
Telephone:     310.229.1000
Facsimile:      310.229.1001

DANIEL L. NASH (admitted *pro hac vice*)
dnash@akingump.com
**AKIN GUMP STRAUSS HAUER & FELD LLP**
1333 New Hampshire Avenue, N.W.
Washington, DC 20036
Telephone:     202.887.4000
Facsimile:      202.887.4288

Attorneys for Defendants/Respondents
National Football League Management Council
and Tennessee Titans

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION, on its own behalf and on behalf of BRUCE MATTHEWS,<br><br>Plaintiffs/Petitioners,<br><br>v.<br><br>NATIONAL FOOTBALL LEAGUE MANAGEMENT COUNCIL and TENNESSEE TITANS,<br><br>Defendants/Respondents. | Case No. 10-CV-1671-JLS-WMc<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO CONFIRM ARBITRATION AWARD**<br><br>Date:   January 7, 2011<br>Time:   3:00 p.m.<br>Ctrm:    6<br>Judge:  Janis L. Sammartino |

## I. INTRODUCTION

Matthews' brief is mostly notable for its omissions. Matthews makes no attempt to argue that he has any material connection with California. Indeed, Matthews does not even mention ties to California except to say that "he filed a claim that alleges he was injured in California while performing services for the Titans." (Plaintiffs/Petitioners' Memorandum of Law in Opposition to Defendants' Motion to Confirm ("Pl. Opp."), p. 3.) In fact, Matthews' cumulative trauma claim does *not* specifically allege that he was "injured in California," but rather that he was injured at "various" locations "while playing and practicing professional football." (Declaration of Daniel L. Nash ("Nash Decl."), Exh. B.) Matthews concedes that he played only four percent of his total games in California,[1] and never alleges California residency or entry into any contract in California.

This Court's review of arbitration awards is ordinarily "highly deferential," *Sheet Metal Workers' Int'l Ass'n Local Union No. 359 v. Madison Indus., Inc. of Ariz.*, 84 F.3d 1186, 1190 (9th Cir. 1996), and this case is no exception. Matthews' admission that he has no California contacts compels confirmation of Arbitrator Sharpe's decision to hold him to the agreement he entered into in Tennessee with his team, the Tennessee Titans, to apply Tennessee law to any workers' compensation disputes. While Matthews contends that confirmation would "elevate[] a private contract right above the right of the State of California to define the law within its borders" (Pl. Opp., p. 1), he points to no statute or binding precedent prohibiting a non-resident employee with negligible California contacts from entering into an agreement with his employer to resolve any workers' compensation disputes under the laws of a state with which he and his employer have substantial contacts. This case thus cannot meet the "narrow" public policy exception, which allows arbitration awards to be vacated only when there is an "explicit, well defined" policy specifically militating against the arbitrator's award. *United Food & Commercial Workers Int'l Union, Local 588 v. Foster Poultry Farms*, 74 F.3d 169, 174 (9th Cir. 1995).

Arbitrator Sharpe's award also is unassailable because California has a "strong policy favoring enforcement" of choice-of-law provisions unless California's interest in the litigation is "materially greater" than the interest of the chosen state. *Discover Bank v. Superior Court*, 36 Cal. 4th 148, 174

---

[1] Matthews has not opposed Defendants' request that this Court take judicial notice of the 1983-2001 game schedules publicly posted on the NFL's website.

(2005). Because California's interest in this case is indisputably much smaller than Tennessee's, the arbitrator's award should be confirmed.

## II. ARGUMENT

### A. There Is No "Explicit, Well Defined" Law Prohibiting A Non-Resident Employee From Entering Into An Agreement With A Tennessee Employer In Tennessee To Apply Tennessee Law To His Workers' Compensation Disputes.

As explained in Defendants' Motion to Confirm Arbitration Award ("Defendants' Motion") (pp. 1, 5, 9), Matthews raised the very same argument at arbitration that he raises in this Court – namely, that California law categorically precludes parties (even parties with no substantial connections to California) from agreeing to apply the workers' compensation laws of a different state. Arbitrator Sharpe considered and rejected that argument. This Court's review of his award "is both limited and highly deferential." *Sheet Metal*, 84 F.3d at 1190. While it is unclear whether Matthews maintains that the award should be vacated under the "public policy" or "manifest disregard of the law" exception, it *is* clear that both exceptions are extremely narrow and rare. *E.g., Ariz. Elec. Power Coop., Inc. v. Berkeley*, 59 F.3d 988, 992 (9th Cir. 1995) ("[C]ourts should be reluctant to vacate arbitral awards on public policy grounds."); *Bear, Stearns & Co. v. Buehler*, 432 F. Supp. 2d 1024, 1026 (C.D. Cal. 2000) ("[M]anifest disregard" is "a very stringent standard"; "[c]onfirmation is required even in the face of erroneous misinterpretation of the law.") (internal quotations and citations omitted).

It also is well-established that the law the award allegedly violated or ignored must be clear and well-defined. *See, e.g., Foster Poultry Farms*, 74 F.3d at 174 (public policy exception requires "'an explicit, well defined and dominant public policy . . . that specifically militates against the relief ordered by the arbitrator'") (quoting *Ariz. Elec.*, 59 F.3d at 992); *Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 879 (9th Cir. 2007) ("To rise to the level of manifest disregard 'the governing law alleged to have been ignored by the arbitrator[] must be well defined, explicit, and clearly applicable.'") (quoting *Carter v. Health Net*, 374 F.3d 830, 838 (9th Cir. 2004)).

Matthews asserts that California Labor Code section 5000 "prohibit[s] employees from waiving the right to seek workers' compensation benefits," but, as explained in Defendants' Opposition to Matthews' Amended Motion to Vacate Arbitration Award ("Defendants' Opposition"), a statutory anti-waiver provision does not "'categorically prohibit choice-of-law provisions.'" (Defendants'

1  Opposition, pp. 3-4 (quoting *1-800-Got Junk? LLC v. Superior Court*, 189 Cal. App. 4th 500, 518
2  [2010 WL 4119245, at *9-10] (2010) (observing that, "had the Legislature intended [the anti-waiver
3  statute] to categorically prohibit choice of law provisions in franchise agreements," "it could have so
4  specified.")).) This rule applies to the plain language of section 5000, which nowhere evinces an intent
5  to bar all choice-of-law agreements in the workers' compensation context. *E.g., Doe v. City of Los*
6  *Angeles*, 42 Cal. 4th 531, 545 (2007) ("A court may not rewrite the statute to conform to an assumed
7  intention which does not appear from its language."). (*See generally* Defendants' Motion, p. 8.)

8  Without a statutory leg to stand on, Matthews argues that the *Alaska Packers* decisions support
9  the broad proposition that employees may never agree to litigate their workers' compensation disputes
10 under the law of any state except California. (Pl. Opp., p. 2.) Matthews is wrong. As explained in
11 Defendants' Opposition (pp. 4-6), the California and U.S. Supreme Courts have both made clear that
12 only employees with significant California contacts are precluded from agreeing to apply a different
13 state's workers' compensation laws. *Alaska Packers Ass'n v. Indus. Accident Comm'n of Cal.*, 1 Cal.
14 2d 250, 260-62 (1934) (holding that the parties' agreement to apply Alaska law to their disputes was
15 invalid because the employee entered into employment in California and was required to return to
16 California to receive wages); *Alaska Packers Ass'n v. Indus. Accident Comm'n of Cal.*, 294 U.S. 532,
17 539, 542 (1935) (affirming the California Supreme Court's decision that because "the contract of
18 employment was entered into within the state" and because "[i]t was necessary . . . to return to
19 California" to receive wages, "the stipulation that the Alaska act should govern was invalid"). The
20 only other relevant judicial authority Matthews cites, *Bowen v. Workers' Comp. Appeals Bd.*, 73 Cal.
21 App. 4th 15 (1999), also involved a California resident who signed an employment contract in
22 California. Relying on *Alaska Packers*, the *Bowen* court held that an employer cannot deny a
23 California resident "California workers' compensation benefits where the employee accepts an offer of
24 employment in California." *Id.* at 26.[2] Matthews did *not* enter into a contract in California.
25 Matthews is left with the vacated Workers' Compensation Appeal Board's ("WCAB") decision
26 in *Booker v. Cincinnati Bengals, Inc.*, Case No. ANA 0401410 (WCAB 2009), vacated on other

27 ─────────────
    [2] Matthews also cites *Hines v. Industrial Accident Comm'n*, 182 Cal. 359 (1920), but that
28 decision, which predates *Alaska Packers*, has no relevance because it did not involve an out-of-state
    contract, out-of-state residents, or any choice-of-law provision. (Defendants' Opposition, p. 6 n.5.)

grounds, Case No. ADJ 4661829.[3] Because WCAB decisions are not "binding precedent," *County of San Luis Obispo v. Workers' Comp. Appeals Bd.*, 133 Cal. App. 4th 641, 649 n.2 (2005), *Booker* cannot constitute the type of "well defined" law necessary to vacate Arbitrator Sharpe's award. *Foster Poultry Farms*, 74 F.3d at 174; *Collins*, 505 F.3d at 884 (rejecting a challenge to an award "because no binding precedent existed" as to the issues the arbitrators addressed).

Without any "explicit, well defined and dominant public policy . . . that specifically militates" against Arbitrator Sharpe's award, *Foster Poultry Farms*, 74 F.3d at 174, the assault hypothetical posed by Matthews (Pl. Opp., p. 5) is a red herring. While "explicit, well defined" criminal statutes obviously forbid a player's assault, *no* statute or judicial decision even suggests that non-resident parties contracting outside of California are prohibited from entering into an arms-length agreement to apply the workers' compensation laws of a state with which they *have* significant contacts. Matthews' attempt to "glean" an anti-choice-of-law-agreement policy from an anti-waiver statute – in contravention of the California Court of Appeal's decision in *Got Junk* – is meritless.[4] *See, e.g., Stead Motors of Walnut Creek v. Automotive Machinists Lodge No. 1173*, 886 F.2d 1200, 1203 (9th Cir. 1989) (en banc) (holding that the public policy exception applies only when a statute specifically and expressly bars the arbitrator's decision; public policy sufficient to vacate an award cannot be "gleaned" from a statute).[5]

---

[3] Matthews also cites to a 1953 Attorney General opinion, but Attorney General opinions are not "controlling authority." *Wenke v. Hitchcock*, 6 Cal. 3d 746, 751-52 (1972). In any event, the opinion never addressed the issue before this Court – whether an out-of-state agreement by non-residents to apply the workers' compensation laws of a different state is precluded by section 5000.

[4] For the same reasons, this Court should reject Matthews' argument that federal labor law, or *Machinists* preemption, prevents unions and employers from bargaining "to take away" "state law benefits that improve employees' health, safety or welfare." (Pl. Opp., p. 4.) As explained in Defendants' Opposition (pp. 12-13), that argument relies on the false assumption that California guarantees benefits to non-resident employees who entered into an agreement in a different state to apply that state's workers' compensation law.

[5] In the cases on which Matthews relies, by contrast, the arbitration awards *were* found to violate "explicit, well defined" law. (Pl. Opp., p. 5 (citing *American Postal Workers Union AFL-CIO v. U.S. Postal Service*, 682 F.2d 1280, 1283 (9th Cir. 1982) (vacating arbitration award because it required the reinstatement of a Postal Service employee who had participated in a strike against his government employer, in violation of a federal statute explicitly prohibiting someone who "'participates in a strike . . . against the Government'" from "'hold[ing] a position in the Government'") (quoting 15 U.S.C. § 7311); *Cal. Pac. Med. Center v. Serv. Emp. Int'l Union*, No. C 06 4685 SC, 2007 WL 81906, at *7 (N.D. Cal. Jan. 9, 2007) (vacating award because it conflicted with an NLRB decision, which "overrides" the arbitrator's decision under well-established Ninth Circuit precedent)).) In *Sprewell v. Golden State Warriors*, 266 F.3d 979, 987 (9th Cir. 2001), another case cited in Matthews' brief (Pl.

**B.     California Law Is Clear That The Parties' Choice Of Tennessee Law Must Be Enforced Because Tennessee Law Is Not Contrary To California Policy And Because California's Interest Is Not "Materially Greater" Than Tennessee's.**

Arbitrator Sharpe's award upholding the parties' choice-of-law agreement is entirely consistent with well-established California law.  Matthews does not dispute (nor could he) that a choice-of-law provision will be enforced in California unless it is proven that "the chosen state's law is contrary to a fundamental policy of California" *and* "California has a materially greater interest than the chosen state in the determination of the particular issue . . . ." *Discover Bank*, 36 Cal. 4th at 174 (quoting Rest. 2d Conflict of Laws, § 187(2)).  As the Restatement test adopted by California courts makes clear, the failure to prove either part of that test is grounds for upholding a choice-of-law provision.  *E.g., Discover Bank v. Superior Court*, 134 Cal. App. 4th 886, 894 (2005).

        1.     <u>Matthews has not established – and cannot establish – that Tennessee law is contrary to a fundamental policy of California.</u>

Matthews contends that his choice-of-law agreement fails the first part of the Restatement test because applying Tennessee law would violate California's "fundamental public policy against the waiver of the right to seek [California] workers' compensation benefits." (Pl. Opp., p. 6.)  But as explained above, no binding authority supports Matthews' position that section 5000 precludes parties from adopting the workers' compensation laws of a different state where, as here, they have minimal California contacts and substantial contacts with the chosen state.  Thus, application of Tennessee's workers' compensation law to the claims of a Titans player who does not reside in California and who contracted with his Tennessee team in Tennessee to apply Tennessee law is *not* contrary to a fundamental policy of California.

Matthews alternatively argues that "Tennessee does not preclude recovery of workers' compensation benefits under the laws of another state," and that "[i]f California law can be applied without violating the policy of the foreign state, there is a false conflict, and California law should be applied." (Pl. Opp., p. 8 n.3 (internal quotations and citation omitted).)  Matthews has it backward.  The question is whether Tennessee law – the law chosen by Matthews and his team – can be applied

---

Opp., p. 5), there was no public policy violation because plaintiff "failed to demonstrate that the public policy of California militates against the enforcement of the award."

without violating the policy of California, *Discover Bank*, 36 Cal. 4th at 174, and as explained above, it can. In any event, if there is indeed a "false" or non-existent conflict, as Matthews seems to insist, the parties' choice of Tennessee law *must* be enforced. *E.g., Application Group, Inc. v. Hunter Group, Inc.*, 61 Cal. App. 4th 881, 897 n.10 (1998).

> 2. <u>Matthews has not established – and cannot establish – that California's interest in the litigation is materially greater than that of Tennessee.</u>

Even if Matthews could prove that California's anti-waiver policy would be violated by the application of Tennessee law in this instance, which he cannot, the inquiry does not end there. *E.g., Brack v. Omni Loan Co., Ltd.*, 164 Cal. App. 4th 1312, 1328 (2008) ("Importantly, we must recognize our analytical responsibility is not complete upon finding a conflict exists between a fundamental policy of California and the law selected by the parties."). This Court also would have to decide that "California's interest in enforcing its law is greater than [Tennessee]'s interest in enforcing its laws." *Id.* It could not do so under the undisputed facts presented here.

In determining which state has a greater interest, California courts consider these Restatement factors: "'(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil[e], residence, nationality, place of incorporation and place of business of the parties.'" *Oestreicher v. Alienware Corp.*, 502 F. Supp. 2d 1061, 1068 (N.D. Cal. 2007) (quoting *Application Group*, 61 Cal. App. 4th at 903). It is undisputed that Matthews' contract was negotiated and entered into in Tennessee, and that the Titans has its place of business in Tennessee. Three of the five factors thus weigh in Tennessee's favor. It also is undisputed that none of the parties resides in California, and that California's only connection to this case is that Matthews played 13 of a total of 318 games here during his 19-year professional football career. Matthews, by contrast, played 42 professional games in Tennessee – *more than three times* the number of games he played in California. By any calculus, the Restatement factors compel a holding that Tennessee has a materially greater interest in the litigation than California.

Sweeping the Restatement test under the rug, Matthews insists that "California courts routinely disregard choice-of-law provisions" that violate a fundamental policy of California. (Pl. Opp., p. 6.)

Not so. In the cases on which Matthews relies, the courts "disregarded" the choice-of-law provision because plaintiffs had established not only that application of the chosen state's law violated a fundamental policy of California, but also that California's interest in the litigation was materially greater than that of the chosen state. *E.g., Application Group*, 61 Cal. App. 4th at 900-01 (invalidating Maryland choice-of-law provision due to California's "strong interest in protecting" the ability of "California-based employers" to hire employees "to provide services in California"); *Davis v. Advanced Care Technologies, Inc.*, No. Civ. S-06-2449, 2007 WL 2288298, at *7 (E.D. Cal. Aug. 8, 2007) (invalidating Connecticut choice-of-law provision because "California has a 'materially greater interest' in this case" where plaintiff "is a resident of California and currently works out of California," and "resided and worked out of California" during his employment with defendants); *United Rentals, Inc. v. Pruett*, 296 F. Supp. 2d 220, 232-33 (D. Conn. 2003) (invalidating Connecticut choice-of-law provision because "the ultimate decision in this case will affect whether [a California resident] will be permitted to remain with his California employer . . . and whether [that employer] is entitled to retain the employee of its choice").[6]

In fact, in one of the cases that Matthews cites, *S.A. Empresa v. Boeing Co.*, 641 F.2d 746 (9th Cir. 1981), the court emphasized the need to avoid "imposing California's public policy on litigants and events having *no substantial contact with the state*." *Id.* at 752 (emphasis added). Rejecting plaintiff's argument that "a choice-of-law provision will be ignored to the extent necessary to preserve California's public policy," the Ninth Circuit held:

> Adoption of [plaintiff's] principle would mean that no party to a contract in any of the 50 states could be certain that his bargain would be enforceable. If minimum contact with California existed, a party could be made to answer a complaint filed in California. Under the rule argued for, every allocation of risk between the contracting parties would have to withstand scrutiny under the public policy dictates of California.

*Id.* The problem identified by the Ninth Circuit is exactly the problem created by Matthews' attack on the arbitration award. That award "respect[s] the choices made by parties to [a] voluntarily negotiated agreement[]," *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 471 (1992), and "bring[s] uniformity, certainty and predictability to the result," *ABF Capital Corp. v. Berglass*, 130 Cal. App. 4th

---

[6] Matthews also cites *Armed Forces Communications, Inc. v. Cass Communications, Inc.*, 60 F.3d 832, 1995 WL 398719 (9th Cir. 1995), an unpublished decision that cannot be cited in this Circuit. United States Court of Appeals for the Ninth Circuit, Rule 36-3.

825, 839 (2005). Having agreed with one of its players in Tennessee to apply Tennessee law, the Tennessee Titans should not "be made to answer" a claim for California benefits. *S.A. Empresa*, 641 F.2d at 752. Given the "minimum contact with California" in this case, *id.*, a purported violation of California policy is simply an insufficient ground to jettison the parties' choice-of-law agreement.

Matthews' only response is that "Tennessee does not have an interest in precluding injured employees from seeking workers' compensation benefits in California." (Pl. Opp., p. 7.) He is mistaken. *First*, Matthews' argument is belied by the five-factor Restatement test, which accords great weight to a state's interest in enforcing agreements negotiated and executed within its borders. *Oestreicher*, 502 F. Supp. 2d at 1068. *Second*, Tennessee, like California, does have an interest in "honor[ing]" contractual choice-of-law provisions. *E.g., Credit Gen. Ins. Co. v. Ins. Serv. Group, Inc.*, No. E2007-00033-COA-R3-CV, 2007 WL 2198475, at *2 (Tenn. App. July 31, 2007) ("As a rule, Tennessee courts will honor a contractual choice of law provision.") (citing *Goodwin Bros. Leasing, Inc. v. H & B, Inc.*, 597 S.W.2d 303, 306 (Tenn. 1980)). An order confirming this award would respect the interests of both states in ensuring that the expectations of contracting parties have been met.

Matthews also unsuccessfully tries to distinguish the cases on which Defendants relied in their opening brief. First, Matthews cites *Guardian Savings & Loan Ass'n v. MD Assocs.*, 64 Cal. App. 4th 309 (1998), where the court enforced a Texas choice-of-law provision even though Texas law conflicted with California policy because Texas's interest in the litigation was "materially greater" than that of California. (Pl. Opp., p. 8.) While it is true that the "materially greater" analysis in *Guardian Savings* is dependent on "the specific facts of an individual case," 64 Cal. App. 4th at 323, the court's weighing of the respective interests is particularly instructive. As here, California had a "questionable interest" because "the rights and duties of the parties were established by agreement of non-domiciliaries outside its jurisdiction." *Id.* at 323. Texas, by contrast, had a strong interest "in assuring" the parties' "justified expectations" that their choice-of-law provision would be enforced. *Id.*

Matthews' attempt to dispose of *Discover Bank* is equally futile. There, California had considerably greater contacts with the litigation than it does here – the named plaintiff and some portion of the putative class were California residents – yet still the court decided that Delaware's interest in the controversy was "demonstrably greater." *Discover Bank*, 134 Cal. App. 4th at 895.

While Matthews tries to pin the *Discover Bank* decision on "plaintiff's assertion of claims under Delaware law" (Pl. Opp., p. 9), in *McMillan v. Wells Fargo Bank*, No. C 08-05739, 2009 WL 1035969 (N.D. Cal. Apr. 17, 2009), the plaintiff asserted claims under California law alone, but the court still held – even though defendant resided in California – that the states where plaintiffs resided "have a greater interest in the treatment of their own residents than does California," *id.* at *4. Although section 5000, unlike the policy against consumer class action waivers at issue in *McMillan, id.*, applies to non-residents (as, for example, in *Alaska Packers*), Matthews has cited no case (and Defendants are aware of none) in which section 5000 was held to prevent parties with no significant California contacts from entering into an out-of-state choice-of-law agreement.

Finally, the absence of any material California contacts is not a "jurisdictional defense[] . . . outside the scope of the award" (Pl. Opp., p. 9), but rather an undisputed fact that requires the award's confirmation. Although the WCAB may "routinely hear[] jurisdictional issues" (*id.*), the question here is not whether the WCAB has jurisdiction over Matthews' workers' compensation claim, but whether Arbitrator Sharpe properly upheld the parties' agreement to resolve all disputes under Tennessee law.[7] Matthews does not contest (nor could he) that *that* issue, which necessitates an inquiry into the extent of his California contacts, is properly before this Court. 29 U.S.C. § 185(a). Because California law does not prevent employees with minimal California connections from agreeing to resolve their workers' compensation disputes under the laws of a state with which they *have* substantial connections, Defendants respectfully request that this Court hold that the award does not violate "explicit, well defined, dominant" California policy, *Foster Poultry Farms*, 74 F.3d at 174, or disregard "binding precedent," *Collins*, 505 F.3d at 884.[8]

---

[7] In fact, Arbitrator Sharpe did *not* decide that the WCAB lacks jurisdiction over Matthews' claim, but that his contract prohibits him from arguing for the application of California law. Because this case does not concern jurisdictional issues, Matthews' reliance on *Brache v. Tampa Bay Storm*, Case No. ADJ1908964 (WCAB 2010), is misplaced.

[8] To the extent that Matthews misconstrues Defendants' constitutional arguments as "jurisdictional defenses" (Pl. Opp., p. 9), "'[t]he issue of personal jurisdiction over plaintiffs in a class action is entirely distinct from the question of the constitutional limitations on choice of law.'" (Defendants' Motion, p. 16 n.6, quoting *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821 (1985).) Defendants addressed only the latter question; they have raised no "jurisdictional defenses" here.

### C. Matthews' Constitutional Arguments Are Still Incorrect.

Matthews continues to argue that by asking this Court to confirm the arbitration award enforcing the contract's choice-of-law provision, Defendants "seek to 'export and impose' the law of Tennessee onto California" in violation of the Full Faith and Credit Clause. (Pl. Opp., p. 11.) Matthews is wrong. As Defendants have demonstrated, the Full Faith and Credit Clause is *not* violated when a court resolves a dispute under the laws of the parties' chosen state. *E.g., Pacific Employers Ins. Co. v. Industrial Acc. Comm'n,* 10 Cal. 2d 567, 573 (1938), *aff'd,* 306 U.S. 493 (1939).[9] In fact, Matthews' *own* position violates the Full Faith and Credit Clause (and the Due Process Clause) because it would read sections of the California Labor Code to mandate the application of California law even in cases (like this one) where the plaintiff lacks significant contacts with California. (*See* Defendants' Opp., pp. 13-15; Defendants' Motion, pp. 15-18).

### CONCLUSION

For the foregoing reasons, and for the reasons stated in Defendants' Motion and their Opposition to Matthews' Motion to Vacate, the award should be confirmed.

Respectfully submitted,

Dated: December 10, 2010

AKIN GUMP STRAUSS HAUER & FELD LLP
Daniel L. Nash
Rex S. Heinke
L. Rachel Helyar
Johanna R. Shargel

By _____s/ Rex S. Heinke_____
Attorneys for Defendants/Respondents
National Football League Management Council
and Tennessee Titans
E-mail: rheinke@akingump.com

---

[9] As discussed in Defendants' earlier briefs (Defendants' Opp., pp. 13-15; Defendants' Motion, pp. 15-18), the award here does not conflict with the *Pacific Employers* cases. In *Pacific Employers*, the Supreme Court held that the California courts need not apply the law of Massachusetts, which had an interest in the case, because California itself had a strong interest in its outcome. According to the Court, it would be "obnoxious" to California's workers' compensation policy "'to deny persons who have been injured in this state the right to apply for compensation *when to do so might require physicians and hospitals to go to another state to collect charges for medical care and treatment given to such persons.*'" 306 U.S. at 504 (quoting *Pacific Employers*, 10 Cal. 2d at 578) (emphasis added).

# PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: 2029 Century Park East, Suite 2400, Los Angeles, California 90067. On December 10, 2010, I served the following document described as: **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO CONFIRM ARBITRATION AWARD** on the interested parties below, using the following means:

The following participants in the case are identified in the Notice of Electronic Filing as registered CM/ECF users and were served by the CM/ECF system:

> Matthew M. Walsh
> Maya C. Dharwarkar
> DEWEY & LeBOEUF LLP
> 333 South Grand Avenue, Suite 2600
> Los Angeles, CA  90071-1530
> Telephone:   213.621.6000
> Facsimile:   213.621.6100
> E-mail:      mwalsh@dl.com
> E-mail:      mdharwarkar@dl.com

*[Attorneys for Plaintiffs/Petitioners]*

I further certify that some of the participants in the case are not registered CM/ECF users. The foregoing document was also e-mailed and sent via United States mail. I enclosed the documents in a sealed envelope addressed to the respective address of the parties stated below and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid at Los Angeles, California.

> Jeffrey L. Kessler
> Adam J. Kaiser
> Jeffrey H. Newhouse
> DEWEY & LeBOEUF LLP
> 1301 Avenue of the Americas
> New York, NY  10019-6092
> Telephone:   212.259.8000
> Facsimile:   212.259.6333
> E-mail:      jkessler@dl.com
> E-mail:      akaiser@dl.com
> E-mail:      jnewhouse@dl.com

*[Attorneys for Plaintiffs/Petitioners]*

Executed on December 10, 2010, at Los Angeles, California.

_____
Serena L. Steiner