# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION, on its own behalf and on behalf of Bruce Matthews,<br><br>Plaintiff,<br><br>vs.<br><br>NATIONAL FOOTBALL LEAGUE MANAGEMENT COUNCIL, and TENNESSEE TITANS,<br><br>Defendants. | CASE NO. 10CV1671 JLS (WMC)<br><br>**ORDER (1) GRANTING DEFENDANTS' MOTION TO CONFIRM ARBITRATION AWARD AND (2) DENYING PLAINTIFF'S MOTION TO VACATE ARBITRATION AWARD**<br><br>(Doc. Nos. 23 & 24.) |

On August 5, 2010, an arbitrator ruled that Bruce Matthews could pursue a workers' compensation claim in California but that the claim must proceed under Tennessee law, if at all. In response, the National Football League Players Association (NFLPA or Plaintiff) brought suit on behalf of itself and Matthews to vacate the arbitration award. Presently before the Court is Defendants National Football League Management Council (NLFMC) and Tennessee Titans' (collectively Defendants) motion to confirm arbitration award (Doc. 23 (Mot. to Confirm) and Plaintiff's motion to vacate arbitration award. (Doc. 24 (Mot. to Vacate).) After consideration, the Court finds that the arbitrator did not manifestly disregard the law and the award is not contrary to public policy. Thus, the Court **GRANTS** Defendants' motion to confirm arbitration award and **DENIES** Plaintiff's motion to vacate arbitration award. The arbitration award granted on August 5, 2010, is **CONFIRMED**.

## BACKGROUND

Bruce Matthews played football in the National Football League (NFL) from 1983 to 2002. (Compl. ¶ 12.) As a member of the NFL, Matthews was bound by a collective bargaining

agreement (CBA) negotiated between the NFLMC, on behalf of the teams, and the NFLPA, on behalf of all NFL players. (Compl. ¶ 19.) The CBA provides that all disputes involving the CBA or the player contract be submitted to final and binding arbitration. (*See* Compl. ¶ 18; Mot. to Confirm, Declaration of Daniel Nash, Ex. A at Art. IX, Sec. 1.)

During his NFL career, Matthews was employed by the Houston Oilers and its successor in interest, the Tennessee Titans. (Doc. 9 at 9–10.) Matthews' contract with the Titans stated that "all issues of law, issues of fact, and matters related to workers compensation benefits shall be exclusively determined by and exclusively decided in accordance with the internal laws of the State of Tennessee without resort to choice of law rules." (*Id.* at 10.)

Approximately five years after he left the NFL, Matthews filed a workers' compensation claim in California. (*Id.*) This ran contrary to the CBA and Matthews' contract with the Titans, and the Titans and the NFLMC filed a grievance against Matthews for "improper[ly] filing and pursuing claims . . . in violation of [Matthews'] NFL Player Contract." (Compl., Ex. A at 2.)

The grievance was arbitrated. At issue was whether Matthews violated his player contract with the Titans by "filing a claim for workers' compensation benefits in California and requesting that the claim be processed under California law." (*Id.*) On August 5, 2010, the arbitrator found that Matthews violated his player contract. The arbitrator issued an arbitration award forcing Matthews to proceed under Tennessee law:

> [Matthews] is not precluded under Paragraph 26D from filing his workers compensation claim in California. However, [Matthews] is required to proceed under Tennessee law, and accordingly shall cease and desist from attempting to persuade the California tribunals to apply California law in violation of Paragraph 26D of the Player's Contract. Further, under this order [Matthews] is required to withdraw from the California proceeding, should the California tribunals ultimately deny the application of Tennessee law.

(*Id.* at 18.)

Unsatisfied with the arbitration award, Plaintiff filed suit, requesting the Court vacate the arbitration award pursuant to § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185. After the relevant pleadings had been filed (Docs. 9 & 19), the parties filed the dueling motions at hand. Defendants' motion argues that the arbitration award should be upheld. And like clockwork, Plaintiff's argues the opposite.

## JURISDICTION AND LEGAL STANDARD

"Section 301 of the Labor Management Relations Act authorizes the district courts to enforce or vacate an arbitration award entered pursuant to a collective bargaining agreement." *Sheet Metal Workers' Int'l Ass'n Local Union No. 359 v. Madison Indus., Inc., of Ariz.*, 84 F.3d 1186, 1190 (9th Cir. 1996). The review is limited and deferential, however. *Id.* at 1190. In reviewing an award, this Court does not sit to hear claims of factual or legal error. *S. Cal. Gas Co. v. Utility Workers Union of Am., Local 132*, 265 F.3d 787, 792 (9th Cir. 2001). Instead, the Court's task is "to review the procedural soundness of the arbitral decision." *Haw. Teamsters and Allied Workers Union, Local 996 v. United Parcel Serv.*, 241 F.3d 1177, 1180–81 (9th Cir. 2001).

Nonetheless, in a narrow set of situations, the Court may vacate an arbitration award. "Vacatur of an arbitration award under § 301 of the LMRA is warranted: (1) when the award does not draw its essence from the collective bargaining agreement and the arbitrator is dispensing his own brand of industrial justice; (2) where the arbitrator exceeds the boundaries of the issues submitted to him; (3) when the award is contrary to public policy; or (4) when the award is procured by fraud." *S. Cal. Gas Co.,* 265 F.3d at 792–93.

An arbitration award may also be vacated because of the arbitrator's "manifest disregard of the law." *Comedy Club, Inc. v. Improv West Assocs.*, 553 F.3d 1277, 1289 (9th Cir. 2009). The Court notes, however, it is not clear this basis for vacatur is available in § 301 reviews. The "manifest disregard ground for vacatur is shorthand for a statutory ground under the [Federal Arbitration Act], specifically 9 U.S.C. § 10(a)(4)." *Id.* at 1290. And the Ninth Circuit has not resolved the issue whether the Federal Arbitration Act (FAA) speaks to suits brought under § 301. *See New United Motor Mfg., Inc. v. United Auto Workers Local 2244*, 617 F. Supp. 2d 948, 954 n.6 (N.D. Cal. 2008). Nonetheless, the FAA is often used as a guide when forming the federal common law of labor arbitration under § 301. *Id.* Thus, this Court will assume, without deciding, that the "manifest disregard of the law" basis for vacatur is available in § 301 actions.

## ANALYSIS

The August 5 arbitration award allowed Matthews to file a workers compensation claim in California. But it required that the claim be adjudicated under Tennessee law, if at all. The

1  question before the Court is whether the award should be vacated.  Procedurally, the Court is faced
2  with a motion to vacate and a motion to confirm.  But given the Court's posture on review, the null
3  result is confirmation of the award.  The onus rests on Plaintiff to establish a basis for vacatur.
4  *United Food & Commercial Workers Int'l Union, Local 588 v. Foster Poultry Farms*, 74 F.3d 169,
5  174 (9th Cir. 1995).
6        Plaintiff makes three arguments for overturning the arbitration award.  First, Plaintiff
7  argues that the award is contrary to California law and public policy.  (Mot. to Vacate at 6.)
8  Second, Plaintiff argues that the award is contrary to federal labor law.  (*Id.* at 9.)  And finally,
9  Plaintiff argues that the award violates the Full Faith and Credit Clause.  (*Id.* at 12.)
10       Given Plaintiff's arguments and the legal framework for reviewing arbitration awards,
11 there are two bases for possibly vacating the August 5 award: because the arbitrator manifestly
12 disregarded the law and because the award is contrary to public policy.  The Court will consider
13 vacatur under these two banners.

14 **1.     Manifest Disregard of the Law**

15       Plaintiff argues that the arbitrator manifestly disregarded the Full Faith and Credit Clause
16 of the United States Constitution when rendering its arbitration award.  (Mot. to Vacate at 12.)
17 The argument is problematic in light of the legal standard.
18       "The manifest disregard exception requires something beyond and different from a mere
19 error in the law or failure on the part of the arbitrators to understand and apply the law." *Collins v.*
20 *D.R. Horton, Inc.*, 505 F.3d 874, 879 (9th Cir. 2007) (internal quotations omitted).  Thus, the
21 Court may not vacate an arbitration award even in the face of an erroneous interpretation of the
22 law.  *Id.*  To vacate on this basis, the moving party must "show the arbitrator understood and
23 correctly stated the law, but proceeded to disregard the same."  *Id.* (internal citations and
24 formatting omitted).  Moreover, the "governing law alleged to have been ignored by the arbitrators
25 must be well defined, explicit, and clearly applicable."  *Id.*
26       The parties and the Court agree that the arbitrator did not consider the Full Faith and Credit
27 Clause when rendering its decision.  (*See* Mot. to Vacate, Ex. A.)  Plaintiff takes it a step further
28 and argues that the failure to consider is a manifest disregard of the law and warrants vacatur.

(Mot. to Vacate at 12.) But this argument is flawed; while it references the legal standard, it ignores the actual law. It is not clear from the record "that the arbitrator [] recognized the applicable law and then ignored it." *Comedy Club, Inc.*, 553 F.3d at 1290. Thus, the Court cannot vacate the arbitration award on this basis.

The Court recognizes, nonetheless, that an arbitration award violating the Full Faith and Credit Clause is problematic. But that possibility is better considered under the "violates public policy" rubric. The Court will, therefore, consider the Full Faith and Credit argument in the next section.

**2.    Public Policy**

In this section, the Court considers whether the August 5 arbitration award is contrary to public policy and should be vacated.

*A.    Legal Standard*

The "contrary to public policy" analysis has two main parts. *Stead Motors of Walnut Creek v. Auto. Machinists Lodge No. 1173*, 886 F.2d 1200, 1212 (9th Cir. 1989). The Court must first delineate a public policy that is "explicit, well-defined, and dominant." *S. Cal. Gas Co.*, 265 F.3d at 794–95 (internal quotations omitted). Such delineation must be made from "reference to the laws and legal precedents and not from general considerations of proposed public interest." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 43 (1987). Second, the public policy must be "one that specifically militates against the relief ordered by the arbitrator." *Stead Motors*, 886 F.2d at 1212–13. Moreover, "[w]here more than one public policy is germane to an arbitration award, [the Court] must engage in balancing of the relevant policies to determine whether to apply the public policy exception to vacate the arbitral award." *Va. Mason Hosp. v. Wash. St. Nurses Ass'n*, 511 F.3d 908, 917 (9th Cir. 2007). The party seeking vacatur bears the burden of showing that the award violates public policy. *Foster Poultry Farms*, 74 F.3d at 174.

*B.    Discussion*

The parties raise several policies germane to an arbitration award denying recovery under California law. Plaintiff argues that California policy prevents contractual waivers of its workers' compensation protections and that federal policy prevents unions and employees from agreeing to

1  violate minimum labor standards. (Mot. to Vacate at 10.) Also relevant is the policy evinced by
2  the Full Faith and Credit Clause. In response, Defendants raise two countervailing policy
3  considerations. Defendants argue that there is a policy favoring collective bargaining and
4  arbitration and that California favors enforcing choice-of-law agreements. (Mot. to Confirm at 1.)
5  The Court considers the applicability of each policy and balances them against each other.

6  *(1)    California Public Policy*

7  The Court begins with California labor law and cases interpreting it. California Labor Code § 5000 states that "[n]o contract, rule, or regulation shall exempt the employer from liability for the compensation fixed by this division." Cal. Lab. Code § 5000. Based on § 5000 and case law, Plaintiff argues there is a policy that "an employment agreement purporting to waive the employee's rights under California's workers' compensation statute is void as a matter of law." (Mot. to Vacate at 7.) And because the August 5 arbitration award "holds that the NFLPA and NFLMC contractually waived the right of Matthews to seek workers' compensation benefits under California Labor Code § 3600," the award "cannot be squared with California's public policy" and must be vacated (*Id.* at 8–9.)

16  The predecessor statute to § 5000, containing the same language, was interpreted in *Alaska Packers Ass'n v. Industrial Accident Commission of California*, 294 U.S. 532 (1935). And the Court begins with *Alaska Packers* in its search for an explicit, well-defined, and dominant public policy.

20  *Alaska Packers* involved three things, an employee, an employer, and a California workers' compensation award. The employee had signed a contract in California and agreed "to be bound by the Alaska Workmen's Compensation Law." *Alaska Packers*, 294 U.S. at 538. A short time later, the employee applied for and received California workers' compensation. *Id.* The employer disagreed with the award and fought it up to the United States Supreme Court. The employer argued that Labor Code § 5000[1] was "invalid under the due process and the full faith and credit clauses of the Federal Constitution." *Id.* at 539.

---

[1] To benefit comprehension, the Court refers to the statute as § 5000 even though the Supreme Court considered the predecessor statute.

1    The employer's due process argument is relevant here.[2]  The *Alaska Packers* employer
2 argued that § 5000 violated due process because the statute "denies validity to the agreement that
3 the parties should be bound by the Alaska Workmen's Compensation Act." *Id.*  The Supreme
4 Court disagreed.  It noted that due process prevents a state from restricting or controlling the
5 obligation of contracts executed and performed without the state. *Id* at 540.  But because the
6 contract was "entered into within [California], . . . its terms, its obligation, and its sanctions are
7 subject, in some measure to the legislative control of the state." *Id.* at 540–41.  Moreover, the
8 facts indicated that without workers' compensation in California, the employee and similarly
9 situated parties would be without remedy. *Id.* at 541.  And thus, the Court held that California
10 "had a legitimate public interest in controlling and regulating this employer-employee
11 relationship" and it would not violate due process to apply § 5000's ban on contracts waiving
12 California workers' compensation. *Id.* at 522.

13    *Alaska Packers* was favorably cited more than seventy years later, when a contract stood
14 between an employee and California workers' compensation. *See Bowen v. Workers' Comp.*
15 *Appeals Bd.*, 73 Cal. App. 4th 15 (Cal. Ct. App. 1999).  The *Bowen* court held that "an
16 employer . . . cannot, simply by adding a contract clause . . . , deny an employee . . . California
17 wokers' compensation benefits where the employee accepts an offer of employment in California."
18 *Id.* at 26.  "Such a contract clause . . . would violate section 5000 prohibiting contracts exempting
19 employers from liability under the California Workers' Compensation Act and frustrate
20 California's interests in protecting employees hired in California and injured elsewhere." *Id.* at 27.

21    After considering *Alaska Packers* and *Bowen*, this Court draws a public policy different
22 from Plaintiff's.  California law does not provide an explicit, well-defined, and dominant public
23 policy barring all contractual waivers of California workers' compensation.  It has, instead,
24 evinced a nuanced analysis in which courts considered the extent of California's interest in
25 providing workers' compensation. *Alaska Packers* explicitly noted that the employee entered into
26 the contract in California and had little chance of remedy elsewhere. *Alaska Packers*, 294 U.S. at
27 542. The case also indicated that it was unnecessary to consider what effect should be given to

28
---
[2]This Court discusses the full faith and credit issue below.

1  § 5000 if the parties' relationship to California gave California "a lesser interest in protecting the
2  employee." *Id.* at 543.
3       Indeed, even Plaintiff's briefing indicates that the policy is not so explicit, well-defined, or
4  dominant.  Plaintiff argues that "the bible of workers' compensation law explained that . . . *Alaska*
5  *Packers* began to develop the general test which inquires whether any incidents of the injury that
6  are important and relevant to workers' compensation fall within the local state." (Doc. 36 at 5
7  (internal quotations and formatting omitted).)  If there were an explicit, well-defined, and
8  dominant policy against waiving of California workers' compensation, considerations of
9  California's interest in protecting the employee would be unnecessary.
10      Certainly, there are situations in which California Labor Code § 5000 rightfully overrides a
11 contract agreeing to workers' compensation based on another state's laws.  But the Court is not in
12 a position to determine whether this is one of those situations.  The Court is charged with
13 determining only whether there is a explicit, well-defined, dominant public policy militating
14 against the arbitration award.  And through this lens, the fact that California's policy is limited to
15 certain situations belies the existence of a blanket policy.  Thus, the Court finds that existing law
16 does not provide an explicit, well-defined, and dominant public policy explicitly militating against
17 an arbitration award preventing Matthews from obtaining relief under California law.
18 *(2)   Full Faith and Credit Clause*
19      Plaintiff's Full Faith and Credit Clause argument is that the arbitration award "impos[es]
20 the law of Tennessee upon the state of California," and the imposition violates the Full Faith and
21 Credit Clause.  (Mot. to Vacate at 12.)  The question facing the Court is whether the Full Faith and
22 Credit Clause evinces an explicit, well-defined, and dominant public policy specifically militating
23 against the relief ordered by the arbitrator.
24      The Full Faith and Credit Clause provides, in relevant part, that "Full Faith and Credit shall
25 be given in each State to the public Acts, Records and judicial Proceedings of every other State."
26 U.S. Const. art. IV, § 1.  A corollary to this rule concerns the extent one state must defer to
27 another.  This issue was addressed in two cases, both of which were discussed by the parties, and
28 both of which the Court will consider here: *Alaska Packers* and *Pacific Employers Insurance Co.*

1 *v. Industrial Accident Commission of California*, 306 U.S. 493 (1939).

2 As noted before, the employee in *Alaska Packers* was contractually "bound by the Alaska Workmen's Compensation Law." *Alaska Packers*, 294 U.S. at 538. But a short time later, the employee applied for and received California workers' compensation. *Id.* A full faith and credit issue arose because the Alaska and California workers' compensation statutes were in direct conflict regarding the employee's workers' compensation remedy. At the Supreme Court, the employer argued that the Alaska worker's compensation statute provided remedy for an injury occurring in Alaska, and "that California courts denied full faith and credit to the Alaska statute by refusing to recognize it as a defense to the application of an award under the California statute." *Alaska Packers*, 294 U.S. at 539. The *Alaska Packers* Court indicated that the proper resolution of this conflict under the Full Faith and Credit Clause would be to "appra[ise] the governmental interests of each jurisdiction, and turn[] the scale of decision according to their weight." *Alaska Packers*, 294 U.S. at 548. And after appraising and turning, the Court found that Alaska's interests were not superior to that of California's. Thus, California "had the right to enforce its own laws in its own courts." *Id.* at 550.

*Pacific Employers* provided a similar situation. The employee was employed in Massachusetts and was sent to California, temporarily, for business. While in California, the employee suffered a work related injury. The employee instituted a workers' compensation claim under California law and succeeded.

The insurance carrier, in charge of paying the employee, argued that California, "in applying the California [workers' compensation act] and in refusing to recognize the Massachusetts [workers' compensation act] as a defense, had denied [Massachusetts]" the full faith and credit of its laws. *Pacific Employers*, 306 U.S. at 497. In the face of this argument, the Supreme Court turned to *Alaska Packers*. And it came to the same conclusion. The Court held that "[f]ew matters could be deemed more appropriately the concern of the state in which the injury occurs or more completely within its power." *Id.* at 503. Thus, the Full Faith and Credit Clause did not prevent California from exerting its own workers' compensation law.

Plaintiff draws, from these cases, the argument that "it is unconstitutional for [a] state to try

to project its laws across state lines." (Mot. to Vacate at 13.) Moreover, Plaintiff argues that the arbitrator's award "seeks to expressly project Tennessee law across state lines by requiring that Tennessee law apply to Matthews's California workers' compensation claim." (*Id.*) Thus, according to Plaintiff, the August 5 award is contrary to the policy set forth by the Full Faith and Credit Clause and accompanying case law.

This Court disagrees. Plaintiff's argument is that the award projects Tennessee law into California, forcing California to apply Tennessee law. But the Full Faith and Credit Clause does not always prevent this. Both *Alaska Packers* and *Pacific Employers* indicated the importance of determining each states' interest in the matter before determining whether one state should apply the law of another. *See Alaska Packers*, 294 U.S. at 548; *Pacific Employers*, 306 U.S. at 503. Thus, the Full Faith and Credit Clause and the case law do not evince an explicit, well-defined, and dominant public policy specifically militating against an award requiring Matthews to pursue his workers' compensation claim under Tennessee law, if at all.

*(3)   Federal Law*

Plaintiff's final argument is that the arbitration award is contrary to federal law. Plaintiff begins by arguing that federal law prevents collective bargaining agreements from undercutting a state's workers' compensation benefits. (Mot. to Vacate at 11.) Plaintiff then argues that "an arbitration award that requires an employee to forfeit rights he would otherwise be permitted to exercise under state workers' compensation laws is contrary to law, illegal, and must be vacated." (*Id.* at 11–12.)

Based on Plaintiff's arguments, the Court is faced with two issues: one concerning the validity of a collective bargaining agreement and the other with an arbitration award. The first argument can be resolved summarily. The Court is not reviewing the collective bargaining agreement, and there is no indication that the collective bargaining agreement itself undercuts any state's workers' compensation benefits.

As for the second argument—that an arbitration award must be vacated if it requires an employee to forfeit rights otherwise exercisable under state workers' compensation law—the Court finds that it does not apply. First, neither case Plaintiff cited stands for the proffered

1 proposition. (*See* Mot. to Vacate at 11–12.) And second, to the extent the policy exists, it does
2 not specifically militate against the arbitration award; Plaintiff falsely assumes Matthews has a
3 right to receive California workers' compensation. That is to say, a policy preventing Matthews
4 from waiving California workers' compensation if he is eligible for it does not apply if he is
5 ineligible for it. The Court is not in a position to make findings regarding Matthews' eligibility for
6 California workers' compensation. But the Court can determine that federal law does not evince a
7 policy specifically militating against this arbitration award. And it does so here. Federal public
8 policy is not a basis for vacating the arbitration award.

*(4)   Conclusion*

What is apparent in this analysis is the Court's extremely limited review. The Court can determine only whether there exists an explicit, well-defined, and dominant public policy specifically militating against the arbitrator's award. Plaintiff provided the Court with three bases for deriving public policy: California law, the Full Faith and Credit Clause of the Constitution, and federal law. And after considering those bases, the Court concludes there is not an explicit, well-defined, and dominant public policy specifically militating against the arbitrator's award.[3]

## CONCLUSION

Plaintiff argues that the arbitration award granted on August 5, 2010, should be vacated because the arbitrator showed a manifest disregard of the law and because the arbitration award is contrary to public policy. The Court finds both of these bases for vacatur unavailing. Thus, the Court **GRANTS** Defendants' motion to confirm the arbitration award and **DENIES** Plaintiff's motion to vacate the arbitration award. The August 5, 2010 arbitration award is **CONFIRMED**.

**IT IS SO ORDERED.**

DATED: January 5, 2011

*Janis L. Sammartino*
Honorable Janis L. Sammartino
United States District Judge

---

[3]Consequently, the Court will not discuss Defendants' countervailing policy considerations.